McClelland Appeal.

Argued March 19, 1968. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused June 28, 1968.

*W. Robert Thompson,* with him *Thompson and Baily,* for appellant.

*George R. Specter,* Assistant Attorney General, with him *Robert W. Cunliffe,* Assistant Attorney General, *John R. Rezzolla,* Deputy Attorney General, and *William C. Sennett,* Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, May 21, 1968:

The appellant is the owner of a parcel of 1.239 acres located in Jefferson Township, Greene County, Penn-

sylvania, upon which his home is located. On February 21, 1961, the Pennsylvania Department of Highways filed a construction plan for the improvement of L.R. 112, Section I, which is a two-lane highway running east and west, commonly designated as State Traffic Route 21. The appellant's property is located on the north side of the highway and the southern boundary thereof is a line paralleling the northern right-of-way line of the construction plan, about forty to sixty feet distant therefrom to the north. The right-of-way line takes none of appellant's property, and, in fact, there is an intervening property between their line and the right-of-way line of the construction plan, so that it does not abut the right-of-way line. The actual construction of the improvement began on May 26, 1965, and was completed some months later, on October 26, 1965.

In the course of construction, appellant's well went dry, and the Commonwealth and its agencies paid appellant $2,042.37, the cost of digging a deeper well. Appellant signed a release "from all suits, damages claims and demands whatsoever, in law or equity, against it or them or any of them, for or on account of taking, injury or destruction of property known as Route 112 Para., Section 1, R/W R.D. No.2, Waynesburg, Pennsylvania, through or by reason of the improvement of Route 112 Para., Section 1, R/W including the change of any streams, water courses, loss of wells and drainage structures or facilities, or through or by reason of the subsequent maintenance thereof, according to the standards of the Department of Highways."

Prior to construction, the access road to the appellant's house was by way of a township road that intersected Route 21 directly to the south of appellant's property, but at that point, the road improve-

ment included a large cut of nearly eighty to a hundred feet, leaving the old access road to dead end on the top of a high embankment, approximately fifty feet beyond appellant's house with a fence across it for safety purposes. There is now an entry to Route 21 some one hundred or more yards to the west, coming up to the property from the other direction. However, there is some dispute as to whether that road is public or private, and it appears that the road may well be so steep and in such poor condition as to be virtually impassible in winter.

Appellant asked for the appointment of viewers on June 20, 1966, which appointment was made. An amendment to the petition was allowed on September 14, 1966, whereupon appellant served his amended complaint. For some reason not disclosed by the record, the viewers did not proceed immediately but set a date for a view on April 18, 1967, and a date for taking of testimony on April 19, 1967. The Commonwealth, on April 17, 1967 petitioned the court for a rule directed to appellant to show cause why the suit should not be dismissed and the viewers' proceedings stayed. In that petition, the Commonwealth contended that appellant had suffered no compensable damages and further, that the release quoted above was a bar to further proceedings. The court ordered that the viewers' proceedings continue for the purpose of viewing the premises, but that the taking of testimony and further proceedings before the viewers be stayed pending disposition of the matters of law raised by the Commonwealth. The court set April 29, 1967 for hearing and argument on the Commonwealth's petition. Subsequent to argument, the court entered an additional order for a hearing to establish facts. Testimony was taken at this hearing and the court then entered an order sustaining the Commonwealth's position and dismissing the case. The court ruled that, as a

matter of law, appellant had suffered no damages compensable under the Eminent Domain Code.

We do not reach the issue of compensable damages under §§612 and 613 of the Code, nor need we consider whether the remote interference with the water which supplied the well on appellant's land is a constitutional taking such as would entitle appellant to damages ascertained in the traditional manner.

Our conclusion is based upon the release executed by appellant in connection with the payment made to him with respect to the well. This court most recently considered a release in *Emery v. Mackiewicz*, 429 Pa. 322, 240 A. 2d 68 (1968). In that case, an injured party had given a general release to the tortfeasor's insurance carrier, and subsequently attempted to recover for injuries not known to him at the time of the execution of the release. We there said that the "general and specific release of all claims, demands and actions for bodily injuries could not possibly be clearer or more specific, or more completely all-inclusive and all-embracing. . . . If such a release can be nullified or circumvented, then every written release and every written contract or agreement of any kind, no matter how clear and pertinent and all-inclusive, can be set aside whenever one of the parties has a change of mind. . .". As in *Emery*, there is no basis here for finding that there was fraud, duress, or deception by the Commonwealth. In such circumstances, a release by appellant of the Commonwealth "from all suits, damages claims and demands whatsoever, in law or equity, against it . . ., for or on account of taking, injury or destruction of . . . [his property], through or by reason of [the construction project] . . ." constitutes a bar to recovery.

One further matter requires mention. Appellant argues that the Commonwealth's "preliminary objections" came too late. The court below did, in fact,

characterize the Commonwealth's petition for rule to show cause as preliminary objections, and in its order stated that "the preliminary objections of the Commonwealth are sustained. . .". Despite this characterization, the Commonwealth's petition did not constitute preliminary objections, nor did it constitute an answer to appellant's complaint and petition for the appointment of viewers. The Eminent Domain Code does not provide for an answer or preliminary objections in situations such as this. Snitzer's Eminent Domain Law, Practice, Forms, §504-1, comments at page 185 on the practice prior to and under the Eminent Domain Code. "If the objections to the appointment of viewers is [sic] . . . the lack of a compensable claim . . . then these issues can apparently be raised preliminarily. An answer to the petition [citing cases] or a petition and rule to show cause why the order appointing the viewers should not be granted, [citing cases] or if granted, should not be vacated, is proper." This was the very procedure adopted by the Commonwealth and approved by us in the cases cited in the above-quoted comment.

Order affirmed.

Mr. Justice COHEN and Mr. Justice EAGEN concur in the result.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.