**Perry Ross Coal Co. Leasehold Condemnation**

*Errol Fullerton,* for petitioners.
*Perry L. Reeher,* for Commonwealth.

LYON, J., April 10, 1970.—The Perry Ross Coal Company as plaintiff initiated against the Commonwealth of Pennsylvania, Department of Highways, two separate eminent domain proceedings which are presently before the court on an appeal from an award of the board of view. All parties in interest have stipulated and agreed that the court shall hear evidence before trial and determine whether the owners have a right to join in the respective condemnation proceedings as condemnees.

The evidence disclosed that James F. and Erma Jean Hohman, adult persons who are husband and wife, are the owners of the real property concerned in the appeal at June term, 1966, no. 15, M.D.; that the property concerned in the appeal at June term, 1966, no. 16, M.D., is jointly owned by John and Maude Mathieson, adult persons who are husband and wife; that on the date of condemnation both

parcels of property were subject to substantially identical leases granting unto the Perry Ross Coal Company the right to remove coal from the respective premises upon payment of the royalties provided for therein; and that the condemnation proceedings were for the purpose of taking an easement over the two properties to construct a limited access highway known as Interstate Route 79. It also appears that the owners of each parcel separately negotiated a settlement for the damages caused by the condemnation and pursuant thereto executed substantially identical written releases in favor of the Commonwealth.

The Commonwealth contends that the owners may not join as condemnees in the eminent domain action concerning the individual property owned by them because the written releases bar recovery of further damages. The two releases executed by the owners are substantially similar in language, if not identical, to the release considered by the Supreme Court in McClelland Appeal, 430 Pa. 284, 242 A. 2d 438 (1968), where the release involved was held to be a full and complete release of all claims for damages and that, therefore, any further recovery was barred. The construction of the release in McClelland Appeal, supra, controls the construction of the release in the present case. Indeed, if the releases executed in the instant case in favor of the Commonwealth could be nullified or circumvented, then every written release and every contract or agreement of any kind, no matter how clear and pertinent and all inclusive, can be set aside whenever one of the parties has a change of mind.

But none of the parties had a change of mind in the present case, for none ever intended the legal consequences of the executed document to be a full and complete release of all claims for future damages occurring by reason of the condemnation. This was

explicit in the testimony of the four owners as well as that of Paul Zook who negotiated the releases in behalf of the Commonwealth of Pennsylvania, Department of Highways. All conceded Zook told the owners that execution of the releases would not bar all further recovery and that in reliance thereon the owners executed the agreement. However, the misrepresentation appears to have been innocently made and we, therefore, conclude there was no fraud, but rather a mutual misapprehension and mistaken understanding of the legal consequences of the executed releases. Under such circumstances, it would be unfair to deny further recovery by reason of the condemnation and for this reason both written releases, having been executed under almost identical conditions, must be set aside.

Equity will relieve against a pure mistake of law when otherwise gross injustice will result. In Price v. Schultz, 85 Pa. Superior Ct. 78 (1925), the Superior Court declared: "We have examined most, if not all of the cases decided by our Supreme Court involving this question and have found none in which relief against a gross injustice resulting from an innocent mistake of law has not been granted where it could be done without doing injustice to others, this upon the fundamental principle of equity that no one shall be allowed to enrich himself unjustly at the expense of another by reason of an innocent mistake of law, entertained by both parties."

In Fink v. Farmers' Bank of Harrisburg, 178 Pa. 154, 35 Atl. 636 (1896), the Supreme Court stated: ". . . equity has so far contented itself with relief in cases of mutual mistake of legal rights where it was possible to restore both parties to statu quo."

The Restatement of Contracts does not distinguish between a mistake of fact and a mistake of law: Restatement, Contracts, §500. Under the restatement

view, an innocent material misrepresentation, whether of law or fact, makes a transaction voidable at the option of a party who is induced to enter into the transaction by reason of a material, innocent misrepresentation: Restatement, Contracts, §§470-491.

Of course, the nature of the relief in cases of mutual mistake depend upon the nature of the mistake. Where it prevents a meeting of the minds, there is no contract, and, hence, the remedy would be rescission. Where the mistake lies in the fact that the instrument does not express the true agreement of the parties, the remedy is reformation: Restatement, Contracts, §§491 and 504. The nature of the relief to be afforded the owners constitutes the real issue in the case, and, hence, our inquiry must be directed to a determination of the nature and extent of the mutual mistake of the parties to this action.

The releases executed by the owners, Hohman and Mathieson, were separately negotiated by Zook on different occasions and were signed and concluded on different dates. Nevertheless, the contentions of the owners relative to each release are substantially similar as are the contentions of the Commonwealth. The record indicates that Zook called upon the owners individually at their respective residence on various occasions for the purpose of negotiating a settlement of their claim for damages by reason of the condemnation. He told each, according to the owners, that the release, which they subsequently executed, would be effective as to surface rights only and would not affect their right to additional damages by reason of coal deposits upon the premises. They also recall that during negotiations, Zook mentioned coal remaining in place as necessary support for the highway improvement being constructed as well as the State Mining Commission, but their testimony fails to

indicate the context in which the terms were employed. Zook's testimony indicates that these terms were used when he told each of the owners that their release would not affect their right to additional compensation for coal required as support for the highway and that the amount of the additional compensation to which they would be entitled after execution of the releases would be determined by a petition to the State Mining Commission.

Although numerous definitive conflicts exist between the testimony of the owners and that of Zook, a determination of the credibility of witnesses is not necessary to our decision, since much of the contradiction concerns mostly irrelevant subjective understandings of the witnesses on both sides. In contract law, a person's legal intentions and the meeting of the minds predicated thereon are based on his words and conduct as they would be interpreted by a reasonable man. A meeting of minds in contemplation of law is not necessarily a meeting of minds in fact: Theiss v. Weiss, 166 Pa. 9 (1895); Brown v. Finney, 53 Pa. 373 (1866). The Restatement, Contracts discusses meeting of minds under the heading "Manifestation of Assent," and says in comment (a) of Section 20: "Mutual assent to the formation of informal contracts is operative only to the extent that it is manifested. Moreover, if the manifestation is at variance with the mental intent, subject to the slight exception stated in §71, it is the expression which is controlling. Not mutual assent but a manifestation indicating such assent is what the law requires."

The record demonstrates that Zook's vague and apparently inconsistent explanation of the owners' right to additional damages was reasonably susceptible of at least two interpretations. The greater part of his direct testimony supports the Commonwealth's con-

tention that he clearly informed the owners that additional monetary damages for coal under the rights-of-way would be paid through a petition to the State Mining Commission. On the other hand, much of his testimony on crossexamination supports the contention of the owners, for he concedes that during the negotiation he stated he had nothing to do with mineral rights and further indicated he did not inform the owners that the State Mining Commission had jurisdiction to award damages only for coal under the right-of-way. Under such circumstances, the owners could not reasonably be expected to realize or appreciate that Zook intended a distinction between further damages for coal under the right-of-way and further damages for coal under the remainder of the property. That this distinction was never definitely specified by Zook at any time during the negotiation is demonstrated by the record which also indicates that Zook, himself, did not always make the distinction while negotiating with the owners. Also, Zook's admitted, unqualified statement that he had nothing to do with mineral rights would tend to persuade the owners that they were not giving up the right to collect further damages for all the coal upon the premises.

It is apparent in light of the foregoing analysis of the testimony that, during the negotiation preliminary to the execution of the two written releases, Zook's statements were somewhat vague, in part inconsistent and, hence, ambiguous in reasonably permitting a conclusion that additional damages would be allowed either for all the coal on the premises or only for the coal under the right-of-way. Either conclusion would have been reasonable for the owners under the circumstances, and from a reading of the record one gains the impression that perhaps Zook, fearful that the releases might not be signed if the owners fully understood the restricted nature of future

damages, skillfully resisted the use of precise, unambiguous and unmistakable language in explaining the subject. His use of the words, "additional damages for coal under the right-of-way," could reasonably have been construed either as restrictive, or as illustrative particularly when examined in connection with his other unqualified statements relative to the future damages for coal.

The law governing the situation resulting from the negotiation between the owners and Zook is succinctly stated in section 71(b) of the Restatement, Contracts: "If both parties know or have reason to know that the manifestations of one of them are uncertain or ambiguous and the parties attach different meanings to the manifestations, this difference prevents the uncertain or ambiguous manifestations from being operative as an offer or an acceptance."

We have already indicated that during the negotiation, Zook's statements to the owners relative to their rights to additional damages were of both a vaguely restrictive and a vaguely unqualified nature. It is, therefore, apparent that the owners as well as Zook should reasonably have recognized the uncertain or ambiguous nature of his manifestations. Hence, no contract was created, because there was no meeting of the minds since the parties reasonably attached different meanings to Zook's uncertain and ambiguous statements. Therefore, the owners are entitled to a rescission of the two written releases upon restoration of the status quo by returning to the Commonwealth of Pennsylvania, Department of Highways, all moneys received by reason of their execution of those two agreements.

In light of our rescission of the two written releases, the respective owners must be permitted to join as additional condemnees in the action involving the real estate titled in their names. Such a joinder is

required by sections 506 and 507 of the Eminent Domain Code of June 22, 1964, P.L. 84. Of course, the court of common pleas does not have jurisdiction to determine (1) the amount of coal underlying the condemned land which is required to be left in place for support of the highway and (2) the value of such coal. Under the Act of June 1, 1933, P.L. 1409, which created the State Mining Commission, that commission has exclusive jurisdiction to determine these matters: Williams v. Department of Highways, 423 Pa. 219, 223 A. 2d 865 (1966); Moffat Appeal, 400 Pa. 123, 161 A. 2d 352 (1960).

## ORDER

Now, April 10, 1970, it is ordered, adjudged and decreed:

1. That James F. and Erma Jean Hohman be permitted to join as additional condemnees in the case at June term, 1966, no. 15, M.D., as owners of the property involved in that proceeding.

2. That John and Maude Mathieson be permitted to join as additional condemnees in the case at June term, 1966, no. 16, M.D., as owners of the property involved in that proceeding, and

3. That the two written releases executed by James F. and Erma Jean Hohman, and John and Maude Mathieson in favor of the Commonwealth of Pennsylvania, Department of Highways, shall be rescinded upon restoration of the status quo by repayment in full to the Commonwealth by said owners of all money paid and received by them for the execution of the said two written releases.

Exception is sealed for additional condemnees, James F. and Erma Jean Hohman.

Exception is sealed for additional condemnees, John and Maude Mathieson.

Exception is sealed for the Commonwealth.