# Williams *v.* Department of Highways, Appellant.

Argued March 22, 1966. Before BELL, C.J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*William R. Mosolino*, Assistant Attorney General, with him *Michael R. Deckman*, Assistant Attorney General, *John R. Rezzolla*, Deputy Attorney General, and *Walter E. Alessandroni*, Attorney General, for Commonwealth, appellant.

*Lee C. McCandless*, for appellees.

OPINION BY MR. JUSTICE JONES, November 15, 1966:

James R. Williams and Anna M. Williams, his wife (Williams), prior to March 11, 1963, were the owners of a 50 acre (approximately) tract of farm land, improved with a house and several farm buildings, located in Muddycreek Township, Butler County. On March 11, 1963, the Commonwealth of Pennsylvania,

acting through the Department of Highways, in connection with the construction of a new limited access highway, condemned 16.72 acres of the Williams property for the highway right-of-way.[1] That portion of the Williams property which was not actually taken by the Commonwealth was divided by the new highway so that approximately 21 acres were on one side and 14 acres on the other side of the new highway. Under 35 acres of the property a vein of mineable coal is located; a portion of this coal underlays the new highway right-of-way while the remaining coal underlays certain portions of the property divided by the new highway.[2]

On Williams' petition, the Court of Common Pleas of Butler County appointed a board of viewers which, after hearing, made an award to Williams. From this award the Commonwealth took both an appeal and an exception. The exception was based on the fact that the board of viewers had taken into consideration, as an element of damage, the value of the coal underlying the property, an element of damage the ascertainment of which, under the Commonwealth's theory, would lie only in the jurisdiction of the State Mining Commission (Commission). After the court had dismissed the Commonwealth's exception, the case came on for trial before a court and jury. The jury returned a verdict in the amount of $34,506[3] in favor of Williams and against the Commonwealth. The Commonwealth's motion for a new trial having been refused, judgment was entered on the verdict and the instant appeal was taken.

[1] The improvements were located on the right-of-way actually taken.

[2] Williams contend that the coal which remained on either side of the highway could not be mined because of the lack of any place upon which to deposit the overburden.

[3] Included in the amount of this verdict were detention damages itemized as $2106.

Upon this appeal questions involving the jurisdiction of the court below, alleged trial errors and the propriety of the verdict are raised.

Initially, the Commonwealth attacks the jurisdiction of the court below to determine the *amount* of coal underlying the Williams' property which is necessary to be left in place to provide adequate support, vertically and laterally, for the new highway and the *value* of such coal. It is the contention of the Commonwealth that the State Mining Commission has *exclusive jurisdiction* to determine the *amount* of coal necessary to be left in place for the support of the highway and the *value* thereof and that the jurisdiction of the board of viewers is restricted to a determination only of the damages, resulting from the taking, to the surface of the land and to coal taken by the Commonwealth which is not necessary to the support of the highway.

Many years ago, in an attempt to insure adequate support for state highways and other Commonwealth lands, easements and rights-of-ways and to protect such highways, etc., from possible subsidence caused by the removal of coal lying thereunder and to further protect the public travelling upon such highways, the legislature created a tribunal called the State Mining Commission to be composed of the president judge of the county wherein the lands, easements or rights-of-way are situated, a member of the Public Utility Commission or an engineer designated by it, the Secretary of Mines or his designated representative, the head of the department, board or commission of the State government owning the lands, easements or rights-of-ways or his designated representative and an engineer designated by the owner or the person entitled to remove the coal. Inter alia, the legislature provided: ". . . This commission shall have *exclusive jurisdiction* of the mining of coal under lands, easements and right of ways purchased, condemned or otherwise ac-

quired by the Commonwealth and judicial powers . . .; to determine and assess damages, if any, for coal required by the said Commission to be left in place and benefits, if any, for improvements or betterments; . . ." (Emphasis supplied) : Act of June 1, 1933, P. L. 1409, §1, as amended, 52 P.S. §1501.

The rationale employed by the court below in rejecting the Commonwealth's argument that the Commission had sole jurisdiction to determine the amount of coal necessary to be left in place for the support of this new highway and the value, if any, of such coal, was: (a) that the reason for the creation of the Commission by the legislature was to grant such Commission exclusive jurisdiction over the *mining* of coal within or under the highway right-of-way and that the power to determine the amount of coal necessary to be left in place to adequately support the highway and to award damages therefor was *incidental*; (b) the "basic authority to assess damages, including coal required for surface support, remains in the Board of Viewers"; (c) "the assessment of damages for coal required for surface support *only* shifts to the Commission when the jurisdiction of the Commission is properly invoked."; (d) that, in the case at bar, since "the owner and the Commonwealth agree that the coal is needed for support"[4] it would be useless to

---

[4] The record before this Court fails to reveal any such agreement. To substantiate his statement that *all* the coal underneath the property must be retained for support of the highway, Williams' counsel in his brief points to the testimony of a witness Foreman at p. 118a of the record; an examination of the record reveals no such testimony and, even if it did, such statement would not bind the Commonwealth under the circumstances. While we deem irrelevant the existence of any such agreement in determining the question of jurisdiction (cf. *Kerry v. Commonwealth*, 381 Pa. 242, 113 A. 2d 254 (1955), where the parties had stipulated the amount of coal necessary to be left in place), we feel it encumbent upon us to point out the silence of the record as to any such agreement.

invoke the jurisdiction of the Commission and, since neither party elected to convene the Commission, the damages to be assessed by the board of viewers are the same as existed prior to the legislation creating the Commission. The teaching of our case law and the clear and unequivocal legislative intent expressed in the legislation which created this Commission and invested it with specific powers mandate our rejection of the rationale of the court below.

When the legislature created the Commission it expressly granted to that Commission "exclusive jurisdiction"[5] to act for the protection of Commonwealth lands, easements and rights-of-ways from possible subsidence caused by the removal of coal thereunder; it did not restrict, either expressly or impliedly, the jurisdiction of the Commission to a determination of the amount of coal necessary to be left in place for adequate support of the highway. The powers exclusively given to the Commission were plenary in the field and included the power to determine what coal was required to adequately support the highway, what coal—unnecessary to the support of the highway— could be mined and the value of the coal to be left in place of which the owner of the coal or person entitled to remove such coal would be deprived.

In *Glen Alden Coal Company Case,* 350 Pa. 177, 182, 38 A. 2d 37, (1944), Mr. Justice (later Chief Justice) STERN, speaking for a unanimous court, stated: "The question as to the amount of coal that should be left in place for the purpose of furnishing support to a highway or other land taken under the right of eminent domain, *as well as the value of such coal,* is

---

[5] In *Harris-Walsh, Inc. v. Dickson City Borough,* 420 Pa. 259, 270, 271, 216 A. 2d 329 (1966), we have recently construed the phrase "exclusive jurisdiction" to preclude any idea of coexistence and to mean sole and undivided jurisdiction which is possessed to the exclusion of jurisdiction in any other body.

one that requires enormous technical and expert knowledge and with which ordinary viewers would be utterly unable to cope. The determination of the value of surface lands is something within the intellectual ken of ordinary citizens, but the question of the extent and value of the 'third estate' is a subject requiring a comprehension of scientific principles and their application, and this fact justifies the creation of a different tribunal to deal with that problem. There is no reason why the legislature may not make such tribunal a permanent body and confine its personnel to specialists and experts: [citing an authority]." (Emphasis supplied). See also: *Moffat Appeal,* 400 Pa. 123, 126, 127, 161 A. 2d 352 (1960).

*Kerry v. Commonwealth,* 381 Pa. 242, 113 A. 2d 254 (1955), presented a situation in many respects similar to that in the case at bar. There, the property owner petitioned the court to appoint a board of viewers to assess damages for land and coal taken by the Commonwealth for the reconstruction and widening of a state highway; the Commonwealth filed preliminary objections on the ground that the exclusive jurisdiction to assess damages for coal required to be left in place to furnish support for the highway was vested in the Commission; the court sustained the Commonwealth's objections and then directed the board of viewers to proceed to assess damages to the surface of the land and the Commission to be convened for the purpose of assessing damages for the coal required to be left in place. Both parties joined in convening the Commission and, prior to a meeting of the Commission, the parties stipulated as to the amount of coal required to be left in place leaving to the Commission's determination the fixing of damages for such coal. While the decisional point in *Kerry* was that a property owner is not entitled to appeal from an award of the Commission to the court of common

pleas, the right of appeal of such property owner being to either the Superior or Supreme Court, this Court did state: "[The property owner] through the board of viewers is entitled to damages for the taking by the Commonwealth of *his surface land and all coal not required for support of the portion of the highway taken in these eminent domain proceedings.* He is *also* entitled to be compensated for the value of all *coal necessary to be left in place* for the purpose of furnishing vertical and lateral support of the portion of the highway so taken. The amount of such latter damages, however, must be determined by the State Mining Commission which is given *exclusive jurisdiction* over this subject matter." (at p. 247). See also: *Moffat Appeal,* supra, 126, 127; *Essex Coal Co. Appeal,* 411 Pa. 618, 192 A. 2d 675 (1963); *Schuster v. Pa. Turnpike Commission,* 395 Pa. 441, footnote, p. 448, 149 A. 2d 447 (1959); *Glen Alden Coal Company Case,* supra.[6]

In permitting a tribunal other than the Commission to determine the damages to the coal under the Williams property necessary to be left in place for highway support the court below fell into error. *Exclusive* jurisdiction to make such determination lies with the Commission.[7] The failure of either party, or both, to seek the convening of the Commission does not affect the exclusiveness of the Commission's jurisdiction. Jurisdiction is not dependent upon the outcome of a race between the parties to see which tribunal shall first be convened.[8]

[6] It is important to note that the Eminent Domain Code of 1964 (Act of June 22, 1964, P. L. 84, §303)—presently inapplicable—expressly provides that "nothing in this act shall be deemed to affect, vary, alter or modify the jurisdiction or power of the . . . State Mining Commission . . . ."

[7] See: Snitzer, Pennsylvania Eminent Domain, §303, pp. 78, 79.

[8] In view of the conclusion reached we need not consider the propriety of the action of the court below in requiring Common-

In arriving at this conclusion we are fully aware that an anomalous situation is created and that a property owner with both surface and subsurface coal rights must resort to two separate tribunals to secure just compensation for a deprivation of such rights, each tribunal to determine the existence, if any, of separate and distinct items of damage all of which arise from the same act of condemnation by the Commonwealth. Such result follows from the statute. The wisdom of such legislation is a matter within the province of the legislature and not the judiciary.

The judgment entered in the court below must be reversed. Since the reversal of this judgment will entail not only a hearing before the Commission, if convened, to determine the amount of coal required to be left in place and the value thereof but, also, a new trial in the court below to determine the damages, if any, to the surface of the land involved and to the coal, if any, actually taken but not required for the support of the highway and, since upon such new trial, the same evidence, allegedly received into evidence erroneously, may again be produced, we deem it necessary to discuss briefly the trial error contentions of the Commonwealth.

Williams called, as an expert witness, one H. G. Callahan whose testimony was objected to by the Commonwealth but received by the court below. The thrust of the Commonwealth's objection was that Callahan's qualifications as an expert as to the value of Williams' property had not been established of record. Callahan testified that the "before value" of the property was $55,000 and the "after value" $16,000. Callahan stated: "I don't profess to be a real estate operator, nor expert, but coal is a commodity

wealth counsel to produce for inspection by Williams' counsel certain core drilling records of coal on the property.

and it's sold by the ton and it's an established product on the market." An examination of Callahan's background reveals that he was a "coal operator" unversed in real estate values but solely experienced in the value of coal. His testimony should not have been received due to the lack of necessary qualifications. The rationale of *Sgarlat v. Commonwealth,* 398 Pa. 406, 409, 158 A. 2d 541 (1960) clearly proscribes such testimony.

The Commonwealth next contends that Mr. Williams, a co-owner of the property, was incompetent to testify because he was "adding uses [of his property] rather than choosing the highest and best use as the basis for his testimony." Specifically, the Commonwealth objected to the witness' consideration of both the agricultural use of the surface and the mineral rights in arriving at a value. An analysis of Williams' testimony reveals its competency.[9] In *Price v. Commonwealth,* 205 Pa. Superior Ct. 142, 145, 208 A. 2d 23 (1965), the Court said: "It is proper for the witness-owner to take into consideration that the land contained a valuable deposit of sand and gravel in forming his opinion. [citing authority]. He may consider particular items of damage in forming his opinion but may not state the individual values." See also: *Hoffman v. Commonwealth,* 422 Pa. 144, 221 A. 2d 315 (1966); *Hencken v. Bethlehem Municipal Water Authority,* 364 Pa. 408, 413, 414, 72 A. 2d 264 (1950); *Westinghouse Air Brake Co. v. Pittsburgh,* 316 Pa. 372, 376, 377, 176 A. 13 (1934).[10] Cf. *Sgarlat v. Commonwealth,* supra.

---

[9] Of course, upon the new trial his testimony must be restricted by the issues to be determined.

[10] Cf. although presently inapplicable, the provisions of §703, of the Eminent Domain Code of 1964, Act of June 22, 1964, P. L. 84, 26 P.S. §1-703 and comment thereto.

Lastly, the Commonwealth urges that a so-called "waiver of detention damages agreement" was erroneously denied admission in evidence. This agreement, bearing date of March 27, 1963, recited that, in consideration of the agreement of the Commonwealth not to collect rent, Williams agreed to waive detention damages on the fair value of their property from the date of condemnation to the date of final settlement or to the date of vacation of the premises, whichever occurred earlier. This agreement was executed by Williams sixteen days after the date of condemnation but, at the date of the trial over a year later, the agreement still had not been executed by the Commonwealth. Under these circumstances, the agreement never became effective [11] and was properly refused admission into evidence.

Judgment reversed and a new trial granted. Upon the new trial the issue shall be limited to a determination of the damages, if any, to the surface of the land and to the coal, if any, not required for support of the highway which has been taken by the Commonwealth. The determination of the amount of coal required to be left in place for the support of the highway and the value of such coal shall be determined by the Commission, if and when properly convened.

[11] See: *Parsons Brothers Slate Co. v. Commonwealth*, 418 Pa. 389, 390-392, 211 A. 2d 423 (1965).