470 A.2d 945

**Ann DENONCOURT, Donald R. Tinsman, Linda T. Butler and Rudolph E. Butler, Jr., Appellants,**

v.

**COMMONWEALTH of Pennsylvania, STATE ETHICS COMMISSION, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 18, 1983.

Decided Dec. 30, 1983.

Michael I. Levin, Harrisburg, for appellants.

Sandra S. Christianson, Gen. Counsel, Harrisburg, for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHER-TY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

OPINION OF THE COURT [1]

FLAHERTY, Justice.

This is an appeal from an order of the Commonwealth Court, 73 Pa.Cmwlth. 59, 457 A.2d 213, granting summary

[1] Reassigned to this writer on December 16, 1983.

judgment to the State Ethics Commission in a class action [2] brought by incumbent school directors seeking declaratory and injunctive relief from the enforcement of Sections 4, 5 and 9 of the Public Officials Ethics Act (Ethics Act) [3] on the grounds that these sections of the act are unconstitutional. These sections of the act provide, in essence, that a public official must, as a condition for taking the oath of office or continuing to perform his duties, and as a condition to receive payment for his services, file a statement of financial interests, § 404(d), which statement shall include the following information with respect to the public official *and* members of his "immediate family," i.e., "[a] spouse residing in the person's household and minor dependent children," § 402:

(1) The name, address and position of the person required to file the statement.

(2) The occupations or professions of the person required to file the statement and those of his immediate family.

(3) Any direct or indirect interest in any real estate which was sold or leased to the Commonwealth, any of its agencies or political subdivisions; purchased or leased from the Commonwealth, any of its agencies or political subdivisions; or which was the subject of any condemnation proceedings by the Commonwealth, any of its agencies or political subdivisions.

(4) The name and address of each creditor to whom is owed in excess of $5,000 and the interest rate thereon. However, loans or credit extended between members of the immediate family and mortgages securing real prop-

---

2. The class was composed of "all incumbent public school directors, public school directors that served at any time during 1981 or thereafter and candidates for the office of public school director and who are married and/or have minor dependent children, and (2) spouses of all incumbent school directors, public school directors that served at any time during 1981 or thereafter and candidates for the office of public school director."

3. Act of October 4, 1978, P.L. 883, No. 170, §§ 4, 5, 9, 65 Pa.C.S.A. §§ 404, 405, 409 (Supp. 1983–84).

erty which is the principal residence of the person filing or of his spouse shall not be included.

(5) The name and address of any person who is the direct or indirect source of income totalling in the aggregate $500 or more. However, this provision shall not be construed to require the divulgence of confidential information protected by statute or existing professional codes of ethics.

(6) The name and address of any person from whom a gift or gifts valued in the aggregate at $200 or more were received, and the value and the circumstances of each gift. However, this provision shall not be applicable to gifts received from the individual's spouse, parents, parents by marriage, siblings, children or grandchildren.

(7) The source of any honorarium received which is in excess of $100.

(8) Any office, directorship or employment of any nature whatsoever in any business entity.

(9) Any financial interest in any legal entity engaged in business for profit.

(c) The statement of financial interest need not include specific amounts for any of the items required to be listed.

65 Pa.C.S.A. § 405(b), (c). The penalty section of the act provides, in pertinent part:

(b) Any person who violates the provisions of ... section 4 [section 404 of Title 65] is guilty of a misdemeanor and shall be fined not more than $1,000 or imprisoned for not more than one year, or be both fined and imprisoned.

65 Pa.C.S.A. § 409(b). This appeal followed Commonwealth Court's grant of summary judgment to the Ethics Commission.

Appellant school directors allege that these provisions of the Ethics Act are unconstitutional as to the directors in that the statutory provision for criminal prosecution in the event of non-disclosure of the financial affairs of members of his immediate family denies due process to the school director because, in the case of these directors, the act

would impose criminal liability based on an inability to comply with the act's requirements, not an unwillingness to comply. Further, appellants urge that the reporting requirements of the act are unconstitutional as to the immediate families in that the requirements of the act invade the family members' right of privacy. We agree that both due process and privacy violations render the family reporting provisions of the act unconstitutional.

## I.

The penalty section of the act, § 409, *supra*, by its terms, provides that a public official who does not file the information required by § 404 "is guilty of a misdemeanor and shall be fined ... or imprisoned ... or ... both." No mention is made of a requirement of criminal intent or criminal culpability. To the contrary, criminal liability may be imposed by the mere non-compliance with the reporting requirements of the act. The public official, therefore, on the one hand, is required to file financial information concerning himself and his immediate family, and failure to do this may result in criminal liability; but on the other hand, the official may have no means to acquire and file the information he is required to produce. As we have had occasion to observe before, a married couple is not a single entity, but separate individuals, each of whom controls or has the right to control his own life, associations, finances, and affairs generally:

> Any presumption of identity of interest [between husband and wife] is based upon the same outmoded social conditions and policy as was the common law legal fiction of unity of person of husband and wife.
>
> * * * * * *
>
> Modern conditions demand that courts no longer engage in automatic and unsupported assumption that one's pecuniary or proprietary interest is identical to that of one's spouse.

*Estate of Grossman*, 486 Pa. 460, 472–73, 406 A.2d 726 (1979). *See also Snider v. Thornburgh*, 496 Pa. 159, 180

(Opinion of Mr. Justice Flaherty), 186 (Opinion in Support of Reversal, Mr. Chief Justice Roberts), 436 A.2d 593 (1981). Thus, under the terms of the Ethics Act, criminal liability may result from non-compliance with reporting requirements with which a public official may have no ability to comply. Imposition of such criminal liability offends due process, for it is axiomatic that criminal liability may not be imposed for the failure to perform acts which a person has no power to perform. Rather, the essence of our criminal law is the imposition of criminal liability for voluntary, culpable acts, see 18 Pa.C.S.A. §§ 301, 302, which are offensive to public order and decency. Thus, the reporting requirements of the Ethics Act do not withstand a due process challenge.[4]

## II.

Equally troublesome, however, is the act's infringement on the privacy rights of the public official's family. This Court has recognized the existence of a constitutionally guaranteed right of privacy based on Article 1, § 1 of the Pennsylvania Constitution, which provides:

All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

Following the suggestion of the United States Supreme Court in *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), we have adopted a two pronged analysis of privacy as involving (1) a freedom from disclosure of personal matters and (2) the freedom to make certain impor-

---

**4.** As Mr. Chief Justice Roberts wrote in *Snider v. Thornburgh:*
Where disqualification from office and criminal liability result not from unwillingness, but from inability to comply with the [Ethics] act's requirements, the imposition of these sanctions is fundamentally unfair and clearly violates the due process requirements of the Constitutions of the United States and Pennsylvania.
496 Pa. 159, 186, 436 A.2d 593, 606 (1981) (Opinion in Support of Reversal).

tant decisions.[5] *In Re June 1979 Allegheny County Investigating Grand Jury,* 490 Pa. 143, 150–51, 415 A.2d 73, 77 (1980). The interest in avoiding a disclosure of personal matters, this Court has said, "finds explicit protection in the Pennsylvania Constitution, Art. 1, § 1 . . . ." *Id.*[6] Thus, there is a recognized privacy interest sought to be protected in this case; it is in the nature of freedom from disclosure of personal matters; and it is constitutionally based.

While it is true that the disclosures required by the act do not require the listing of particular sums of money, business associations are, nevertheless, required to be listed and particular individuals and business entities named. As to an office holder himself, such reporting requirements are a permissible intrusion into one's privacy, *Snider v. Thornburgh,* 496 Pa. 159, 436 A.2d 593 (1981), but such an intrusion into privacy must be viewed quite differently when it affects private persons who, unlike the public official, do not hold themselves out as public figures or as seekers for public office.

It is not the case, of course, that every intrusion into an individual's privacy is impermissible. As just mentioned, this Court has approved the very intrusions at issue in this case as applied to the office holder himself, *Id.* We have also held that an investigating grand jury may subpoena hospital medical records containing reports of patients' tissue specimens, *In Re June 1979 Allegheny County Investigating Grand Jury, supra;* that a commission of the General Assembly may compel a person to reveal his personal affairs to the extent that such disclosure is reasonably required for the general purpose of the inquiry, *Annenberg v. Roberts,* 333 Pa. 203, 2 A.2d 612 (1938). On the other hand, we have held that the right to be free from unreasonable searches and seizures under Art. I, § 8 of the

**5.** *See,* generally, Annotation, "Supreme Court's Views as to the Federal Legal Aspects of the Right of Privacy," 43 L.Ed.2d 871.

**6.** The *Allegheny County Grand Jury* case was a plurality opinion, but Mr. Justice Larsen and this writer, albeit in dissenting opinions, joined the majority in recognizing a constitutionally based right of privacy.

Pennsylvania Constitution "is tied to the implicit right to privacy in this Commonwealth," which protects a customer's "legitimate expectation of privacy in records pertaining to their affairs kept at the bank," *Commonwealth v. DeJohn*, 486 Pa. 32, 49, 403 A.2d 1283, 1291 (1979). In all these cases there is implicit a balancing of an individual's right to privacy against a counterveiling state interest which may or may not justify, in the circumstances, an intrusion on privacy.

 This balancing process must be carried out with recognition of the nature of the privacy right and its important relationship to other basic rights. Mr. Justice Brandeis has ably described the right of privacy and its relation to our sustained viability as free and healthy individuals as follows:

The makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness. They recognized the significance of man's spiritual nature, of his feelings and of his intellect. They knew that only a part of the pain, pleasure and satisfactions of life are to be found in material things. They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. *They conferred, as against the government, the right to be let alone—the most comprehensive of rights and the right most valued by civilized men.*

*Olmstead v. United States,* 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944, 956 (1928) (Dissenting Opinion of Mr. Justice Brandeis) (Emphasis supplied). Thus, it may be said that government's intrusion into a person's private affairs is constitutionally justified when the government interest[7]

7. The nature of the governmental purpose in this case is well expressed at the beginning of the act:

The Legislature hereby declares that public office is a public trust and that any effort to realize personal financial gain through public office other than compensation provided by law is a violation of that trust. In order to strengthen the faith and confidence of the people of the State in their government, the Legislature further declares that the people have a right to be assured that the financial interests of holders of or candidates for public office present neither a conflict nor the appearance of a conflict with the public trust.

is significant and there is no alternate reasonable method of lesser intrusiveness to accomplish the governmental purpose.[8] Whether there is a significant state interest will depend, in part, on whether the state's intrusion will effect its purpose; for if the intrusion does not effect the state's purpose, it is a gratuitous intrusion, not a purposeful one. Here, while the family reporting requirement does great damage to privacy interests, it does not realistically hold out much hope for effectiveness: a public official determined to evade the financial reporting requirements of the act will merely transfer various property interests to individuals or business entities outside of his immediate family. Thus, although certain financial disclosures of an office holder's family *may* be of public interest, it cannot fairly be said that such disclosures represent a significant state interest. Moreover, when one considers the likely impact of the Ethics Act upon the associational rights of the family members under the United States Constitution and the

> Because public confidence in government can best be sustained by assuring the people of the impartiality and honesty of public officials, this act shall be liberally construed to promote complete disclosure.
>
> 65 Pa.C.S.A. § 401.

**8.** *Compare Roe v. Wade,* where the United States Supreme Court concluded that an individual's decision to have an abortion implicates that person's privacy rights, which are fundamental, if not absolute:

> Where certain "fundamental rights" are involved, the Court has held that regulation limiting these rights may be justified only by a "compelling state interest," *Kramer v. Union Free School District,* 395 U.S. 621, 627, 23 L.Ed.2d 583, 89 S.Ct. 1886 [1890] (1969); *Shapiro v. Thompson,* 394 U.S. 618, 634, 22 L.Ed.2d 600, 89 S.Ct. 1322 [1331] (1969); *Sherbert v. Verner,* 374 U.S. 398, 406, 10 L.Ed.2d 965, 83 S.Ct. 1790 [1795] (1963), and that legislative enactments must be narrowly drawn to express only the legitimate state interests at stake. *Griswold v. Connecticut,* 381 U.S. [479], at 485 [85 S.Ct. 1678 at 1682], 14 L.Ed.2d 510; *Aptheker v. Secretary of State,* 378 U.S. 500, 508, 12 L.Ed.2d 992, 84 S.Ct. 1659 [1664] (1964); *Cantwell v. Connecticut,* 310 U.S. 296, 307–308, 84 L.Ed. 1213, 60 S.Ct. 900 [904–905], 128 A.L.R. 1352 (1940)....

410 U.S. 113, 155, 93 S.Ct. 705, 728, 35 L.Ed.2d 147, 178 (1973).

Pennsylvania Constitution,[9] the infirmities of the act for overbreadth become apparent:

A law is void on its face if it "does not aim specifically at evils within the allowable area of [government] control, but ... sweeps within its ambit other activities that constitute an exercise" of protected expressive or associational rights.

Tribe, *American Constitutional Law*, § 12–24, p. 710 (1978), quoting *Thornhill v. Alabama*, 310 U.S. 88, 97, 60 S.Ct. 736, 741, 84 L.Ed. 1093, 1100 (1939). While it may be true that some public officials would be apprehended after they had breached the public trust or dissuaded from improper activity by the family reporting requirement of the Ethics Act, it is certainly true that all of a public official's family members will suffer a chilling effect on their freedom to associate with persons or business entities of their own choice, knowing that these associations will be subject to public scrutiny and appraisal.[10]

For these reasons, we hold that the reporting provisions of the Ethics Act relating to family members are unconsti-

**9.** *See* Annotation "Supreme Court's Views as to the Federal Legal Aspects of the Right of Privacy" 43 L.Ed.2d 871 § 11—Freedom of Association:

The First Amendment has been held to impose limitations upon governmental abridgment of freedom to associate and privacy in one's associations. *NAACP v. Alabama*, (1958) 357 US 449, 2 L Ed 2d 1488, 78 S Ct 1163; *Bates v. Little Rock* (1960) 361 US 516, 4 L Ed 2d 480, 80 S Ct 412; *Gibson v. Florida Legislative Investigation Committee* (1963) 372 US 539, 9 L Ed 2d 929, 83 S Ct 889; *Griswold v. Connecticut* (1965) 381 US 479, 14 L Ed 2d 510, 85 S Ct 1678 (where the court stated that the First Amendment right of association has a penumbra where privacy is protected from governmental intrusion); *De Gregory v. Att. Gen. of New Hampshire* (1966) 383 US 825, 16 L Ed 2d 292, 86 S Ct 1148; *Katz v. United States*, (1967) 389 US 347, 19 L Ed 2d 576, 88 S Ct 507 (recognizing rule.)

*See also* Annotation, "The First Amendment Right of Association," 33 L.Ed.2d 865 § 8, and Tribe, *American Constitutional Law*, "Rights of Privacy and Personhood," § 15–3 pp. 893–94 (1978).

**10.** In *Kolender v. Lawson*, the majority of the United States Supreme Court, agreeing with two dissenting justices, wrote, "[T]he overbreadth doctrine permits facial challenge of a law that reaches a substantial amount of conduct protected by the First Amendment." 461 U.S. 352, 361–362, n. 10, 103 S.Ct. 1855, 1860, n. 10, 75 L.Ed.2d 903 (1983).

tutional in that they violate the due process rights of the public official and the family's right to privacy under Art. 1 § 1 of the Pennsylvania Constitution.

Reversed.

ROBERTS, C.J., joins Part I of this opinion.

HUTCHINSON, J., files a concurring and dissenting opinion.

NIX, J., files a dissenting opinion in which LARSEN, J., joins.

HUTCHINSON, Justice, concurring and dissenting.

I concur in the result the majority reaches only insofar as it finds unconstitutional the spousal disclosure provisions of our Public Officials' Ethics Act. Such disclosure is in my view based on outmoded notions of spousal unity and subservience. Although I share the dissent's concern that removal of this requirement may render the act meaningless in its application to some officials who are members of traditional families, I believe that concern is outweighed by the danger of imposing the sanction of removal or the sanctions of the criminal laws on other public officials whose spouses commonly follow independent private careers and would be unwilling or unable to make the disclosure called for by the statute. In such cases the requirement of spousal disclosure seems to me to subject such officials to prosecution based on status. That result seems to me to offend the provisions of Article I, Section I, of the Declaration of Rights in our Pennsylvania Constitution. On this independent state ground alone, analogous to Fourteenth Amendment due process, I agree with the majority that a public official cannot be required to disclose spouse's financial interests under pain of criminal sanctions.

However, I wish to disassociate myself entirely from what I consider is the majority's unnecessary discussion of the shadowy reaches of the right of privacy the judiciary has interpolated into our state and federal constitutions. Moreover, I see no reason why a parent who seeks or

accepts public office cannot be required to disclose the financial interests of children dependent on him.

For these reasons I concur in the result with respect to spousal disclosure, but dissent with respect to minor dependent children.

NIX, Justice, dissenting.

I dissent. The General Assembly has clearly identified the important state interest sought to be furthered by the Ethics Act:

The Legislature hereby declares that public office is a public trust and that any effort to realize personal financial gain through public office other than compensation provided by law is a violation of that trust. In order to strengthen the faith and confidence of the people of the State in their government, the Legislature further declares that the people have a right to be assured that the financial interests of holders of or candidates for public office present neither a conflict nor the appearance of a conflict with the public trust. Because public confidence in government can best be sustained by assuring the people of the impartiality and honesty of public officials, this act shall be liberally construed to promote complete disclosure.

Act of October 4, 1978, P.L. 883, No. 170, § 1, 65 P.S. § 401 (Supp. 1983–84).

We are here concerned with a conflict between the spousal disclosure provisions of the Ethics Act and the constitutional right to privacy. The right of privacy as has been defined by the decisions of the United States Supreme Court encompasses two distinct privacy interests. First, there is an "autonomy" interest, which relates to personal decision-making in matters of fundamental importance. *See e.g., Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). This autonomy interest may be overridden by the legislature

only where the state can demonstrate a compelling interest which cannot be effectuated by less restrictive means. *See e.g., Paul v. Davis, supra; Paris Adult Theatre I v. Slaton, supra; Roe v. Wade, supra.* Second, there is a lesser but nonetheless important interest in the "confidentiality" of one's personal affairs. *See Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). The constitutionality of legislation which impinges upon this right to confidentiality is determined by balancing the public interest to be served against the personal interest affected. In addition, there must be a rational relationship between the means employed by the legislature and the goals sought to be achieved. *See Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

The privacy interest implicated in the instant matter, namely the right of the spouse of a public official to confidentiality in his or her financial dealings, clearly falls within the "confidentiality" category. Thus the balancing test and the rational relationship test are here applicable.

Employing the balancing test, I am of the view that the state interest in strengthening and maintaining public confidence in government far outweighs the interest of spouses of government officials in their personal financial affairs. I do not believe such a conclusion works an undue hardship. Public service, with its attendant sacrifices to spouses as well as office holders, is not forced upon the public official. The spouse of a public official undoubtedly plays a role in that official's career and shares in the prestige and honor as well as the inevitable sacrifices of public office. Thus the burden of public financial disclosure is merely an additional inconvenience that must be accepted by the marital unit if one of the members seeks to hold public office.

I am also convinced that the Ethics Act's mandatory periodic disclosure scheme is a reasonable and practicable means of achieving the legislature's purposes. The majority improperly projects that public officials will deliberately evade the Ethics Act's disclosure requirements, thus frustrating those purposes. I question the propriety of prejudg-

ing the efficacy of the legislation under scrutiny, nor do I impute to the average hard working and dedicated public official such a nefarious intent. This Court has declared on innumerable occasions that it is not our function to pass upon the wisdom of legislation. *E.g., Wanamaker v. Philadelphia School District,* 441 Pa. 567, 274 A.2d 524 (1971); *Commonwealth v. Philadelphia Eagles, Inc.,* 437 Pa. 25, 261 A.2d 309 (1970); *Shankey v. Staisey,* 436 Pa. 65, 257 A.2d 897 (1969); *Williams v. Department of Highways,* 423 Pa. 219, 223 A.2d 865 (1966). Thus under both tests the spousal disclosure provisions clearly fall within permissible constitutional bounds.

I am likewise in disagreement with the majority's conclusion that the penal provisions of section 9(b) of the Ethics Act, 65 P.S. § 409(b), violate due process. Section 5 of the Ethics Act, 65 P.S. § 405, which specifies the *contents* of a statement of financial interests, is not mentioned in section 9(b). The majority nevertheless interprets section 9(b) as imposing absolute criminal liability upon individuals unable to comply with section 5, and bases its finding of a due process violation upon that interpretation. Such a reading violates two well established principles of statutory construction. First, it must be presumed that the General Assembly does not intend to violate the Constitutions of the United States or of this Commonwealth. 1 Pa.C.S. § 1922(3). Second, penal provisions such as section 9(b) must be strictly construed. 1 Pa.C.S. § 1928(b)(1).[1]

Section 9(b) explicitly provides criminal sanctions for violation of section 4 of the Ethics Act, 65 P.S. § 404, which prescribes who must file a statement of financial interests and when and where such statements must be filed. Normal usage commands the conclusion that the conduct proscribed by section 9(b) is *failure to file* the required statement in compliance with section 4. Since section 9(b) does not refer to the conduct described in section 5, there is no

1. Section 105 of the new Crimes Code, 18 Pa.C.S. § 105, is not applicable since this is not a provision under that Code.

basis for suggesting the applicability of section 9(b) to section 5.

More importantly, the liability for the *content* of the disclosure statement is explicitly governed by section 5(a), which requires that document to be "signed under penalty of perjury." 65 P.S. § 405(a). Therefore, in my judgment, section 9(b) may not be interpreted as providing that a public official or candidate unable to obtain financial data from his or her spouse is subject to the "automatic" penalties of section 9(b). It is clear in such case the disclosure of the spouse's unwillingness to supply such information satisfies the mandate of section 5.

Accordingly, I would affirm the order of the Commonwealth Court.

LARSEN, J., joins in this dissenting opinion.