639 A.2d 776

**Marilyn McCUSKER, Deceased, Alan L. McCusker, Appellant,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (RUSHTON MINING COMPANY), Appellee.**

Supreme Court of Pennsylvania.

Submitted March 8, 1993.

Decided March 28, 1994.

382

Raymond F. Keisling, Will, Keisling, Ganassi & Schmitt, Carnegie, for appellant.

David P. Andrews, Altoona, Ernest D. Preate, Jr., Atty. Gen., Michael R. Hetrick, Asst. Counsel, Bureau of Worker's Compensation, Harrisburg, for appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

ZAPPALA, Justice.

We granted this appeal to consider a challenge on federal and state constitutional grounds to § 307(7) of the Workmen's Compensation Act (Act), of June 2, 1915, P.L. 736, as amended, 77 P.S. § 562, which provides for benefits to dependents of deceased workers.

Appellant, Alan McCusker, began receiving workmen's compensation benefits pursuant to § 307(7) of the Act in January, 1980, after his wife was killed in a work-related accident. In 1988, Rushton Mining Company (Employer) petitioned to terminate the Appellant's benefits alleging that he was living in a meretricious relationship in violation of Section 307(7) of the Act. The Appellant filed an answer denying that he was in violation of Section 307(7) and asserting that the section was unconstitutional under Article 3, Section 18 of the Pennsylvania Constitution.

On March 7, 1989, a hearing was held before a referee. The Appellant testified that he had been living with a woman for three and one-half years prior to the hearing. He admitted to socializing with the woman in the community where they reside and to sexual relations with her during that time. The referee granted the Employer's petition, and the order of the Workmen's Compensation Appeal Board affirming the referee's decision was subsequently affirmed by the Commonwealth Court, 145 Pa.Cmwlth. 261, 603 A.2d 238. We now affirm the order of the Commonwealth Court.

Section 307(7) of the Act states in relevant part:

Should any dependent of a deceased employee die or remarry ..., the right of such dependent ... to compensation under this section shall cease except that if a widow remarries, she shall receive one hundred four weeks compensation ... in a lump sum after which compensation shall cease: Provided, however, That if, upon investigation and hearing,

it shall be ascertained that the widow or widower is living with a man or woman, as the case may be, in meretricious relationship and not married ... the board may order the termination of compensation payable to such widow or widower.

The Appellant contends that Section 307(7) offends the equal protection guarantees of both the U.S. Constitution and the Pennsylvania Constitution.[1] "The equal protection provisions of the Pennsylvania Constitution are analyzed by this Court under the same standards used by the United States Supreme Court when reviewing equal protection claims under the Fourteenth Amendment to the United States Constitution." *Love v. Borough of Stroudsburg*, 528 Pa. 320, 325, 597 A.2d 1137, 1139 (1991), citing *James v. Southeastern Pennsylvania Transportation Authority*, 505 Pa. 137, 477 A.2d 1302 (1984).

The initial determination that must be made is whether the statute creates a classification. *Commonwealth v. Parker White Metal Co.*, 512 Pa. 74, 515 A.2d 1358 (1986). Because Section 307(7) creates classes of dependent spouses of deceased employees who remarry or are living with another in a meretricious relationship, the threshold question in this case is answered in the affirmative.

**1.** Section 1 of the Fourteenth Amendment of the United States Constitution provides:

No state shall ... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.

Article I, Sections 1 and 26 of the Pennsylvania Constitution provide:

**Section 1. Inherent rights of mankind**

All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

**Section 26. No discrimination by Commonwealth and its political subdivisions**

Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.

■ The appropriate standard of review under an equal protection analysis depends upon the type of interest affected by the statutory classification. As we stated in *James,* supra,

> Under a typical fourteenth amendment analysis of governmental classifications, there are three different types of classifications calling for three different standards of judicial review. The first type—classifications implicating neither suspect classes nor fundamental rights—will be sustained if it meets a "rational basis" test. In the second type of cases, where a suspect classification has been made or a fundamental right has been burdened, another standard of review is applied: that of strict scrutiny. Finally, the third type of cases, if "important," though not fundamental rights are affected by the classification, or if "sensitive" classifications have been made, the United States Supreme Court has employed what may be called an intermediate standard of review, or a heightened standard of review. There are, in summary, three standards of review applicable to an equal protection case, and the applicability of one rather than another will depend upon the type of right which is affected by the classification.

505 Pa. at 145, 477 A.2d at 1305–1306 (Citations omitted).

■ The Appellant contends the interest that is burdened by Section 307(7) is the right to privacy and that the applicable standard of review is strict scrutiny. There is no question that the United States Constitution provides protections for an individual's right of privacy. *See Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977); *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). This Court has similarly recognized a constitutionally protected privacy interest. *See Stenger v. Lehigh Valley Hosp. Center,* 530 Pa. 426, 609 A.2d 796 (1992); *In re "B",* 482 Pa. 471, 394 A.2d 419 (1979).

■ The decisions of the United States Supreme Court make it clear that only personal rights that can be deemed

fundamental or implicit in the concept of ordered liberty are included in this guarantee. *Roe v. Wade,* 410 U.S. at 152, 93 S.Ct. at 726 (quoting *Palko v. Connecticut,* 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937)). Where a fundamental right to privacy exists, government regulation limiting this right may only be justified by a compelling state interest. *Roe,* 410 U.S. at 154, 93 S.Ct. at 727; *Kramer v. Union Free School Dist.,* 395 U.S. 621, 627, 89 S.Ct. 1886, 1890, 23 L.Ed.2d 583 (1969); *Fabio v. Civil Service Commission,* 489 Pa. 309, 323, 414 A.2d 82, 89.

In *Whalen v. Roe,* Justice Stevens wrote for a unanimous Court that:

> The cases sometimes characterized as protecting privacy have in fact involved at least two different kinds of interests. One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.

*Id.* 429 U.S. at 598–600, 97 S.Ct. at 875–877.

The right to avoid disclosure is not implicated in the instant case. The object of this right is "to protect an individual from revealing matters which could impugn his character and subject him to ridicule or persecution." *Stenger,* 530 Pa. at 434, 609 A.2d at 800. For example, in *Stenger,* a plaintiff infected with the HIV virus through a blood transfusion sought to compel discovery of the identity of the blood's donor from defendant blood bank. The blood bank argued that forced disclosure of the donor's identity would violate the donor's constitutional guarantees of privacy. We agreed that the blood donor's right to privacy was implicated, but held that there was a compelling interest in disclosing the information to prevent the spread of the HIV virus. *See also Denoncourt v. Com. State Ethics Com'n,* 504 Pa. 191, 470 A.2d 945 (1983) (act requiring disclosure of financial interests of members of immediate family of public officials violates family members' right to privacy); *In re "B",* 482 Pa. at 471, 394 A.2d at 419 (patient's right to privacy prevents disclosure of information revealed in context of psychotherapist-patient relationship).

In this case, there is no disclosure or compulsion to disclose any information that would impugn the Appellant's character or subject him to persecution. An inquiry into the Appellant's living arrangement was certainly made, but there was no threat to release this information to the world at large. The information was merely used to make an eligibility determination for the purposes of worker's compensation benefits. In any event, disclosure implies that confidential information has been released or compelled. It is a simple fact of this case that the Appellant is living with a woman who is not his wife. He does not attempt to hide this fact from the public at large. Thus, the disclosure aspect of the privacy right is simply not implicated.

Nor has the Appellant's independence to make certain kinds of decisions been infringed upon by the regulation in question. As we recognized in *Fabio*, the pale of the privacy right extends to activities relating to marriage, see *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), procreation, *Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), contraception, *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Griswold v. Connecticut*, 381 U.S. at 479, 85 S.Ct. at 1678; family relationships, *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944), and child rearing and education, *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). Central to this aspect of the privacy right is the intrusion of government into the sphere of marriage and family life by prohibiting or criminalizing certain kinds of decisions. *See, e.g., Loving*, 388 U.S. at 12, 87 S.Ct. at 1823 (law prohibiting interracial marriages constitutionally invalid); *Skinner*, 316 U.S. at 541–42, 62 S.Ct. at 1113–14 (law mandating castration as penalty for certain felonies constitutionally invalid); *Griswold*, 381 U.S. at 485–486, 85 S.Ct. at 1682–1683 (law prohibiting birth control invalid as violation of right to privacy); *Pierce*, 268 U.S. at 535, 45 S.Ct. at 573 (law prohibiting parents from sending children to private schools invalid). *Roe v. Wade*, 410 U.S. at 153, 93 S.Ct. at 727 (law prohibiting abortion invalid as violation of right to privacy.)

The statute at issue in the instant case simply does not prohibit or criminalize the Appellant's choice of living or family arrangements. Section 307(7) in no way prevents the Appellant from entering into a meretricious relationship; nor does it impose criminal sanctions for such a relationship. This statute merely sets forth an eligibility requirement for benefits under the worker's compensation program. Appellant's best argument in this regard is that this statute violates his right to privacy in his intimate affairs because it forces him to order those affairs in a specific manner to obtain benefits from the program. This argument has been specifically rejected by the United States Supreme Court, however, as too attenuated to constitute a privacy violation. *See Bowen v. Gilliard,* 483 U.S. 587, 601–602, 107 S.Ct. 3008, 3017–3018, 97 L.Ed.2d 485 (1987) ("That some families may decide to modify their living arrangements in order to avoid the effect of the [statute], does not transform the [statute] into an act whose design and direct effect is to 'intrud[e] on choices concerning family living arrangements (citations omitted).' ") *See also Zablocki v. Redhail,* 434 U.S. 374, 368–78, 98 S.Ct. 673, 386–387, 54 L.Ed.2d 618 (1978) (statutory classification determining food stamp eligibility on household basis rather than individual basis does not "directly and substantially" interfere with family living arrangements and therefore does not burden a fundamental right.)

■ It is well settled that in the area of social welfare legislation a court's review of government regulation is deferential. *See Bowen,* 483 U.S. at 597, 107 S.Ct. at 3015 (quoting *Matthews v. De Castro,* 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976). In the area of social welfare, a state regulation does not violate the Equal Protection Clause because the classifications drawn are imperfect; if the classification has a reasonable basis, it does not offend the Constitution. *Graham v. Richardson,* 403 U.S. 365, 371, 91 S.Ct. 1848, 1851, 29 L.Ed.2d 534 (1971); *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). This standard of review is based on the power of the legislature to "define the scope and the duration of the entitlement to ... benefits,

and to increase, to decrease, or to terminate those benefits based on its appraisal of the relative importance of the recipients' needs and the resources available to fund the program." *Bowen*, 483 U.S. at 597, 107 S.Ct. at 3015 (quoting *Atkins v. Parker*, 472 U.S. 115, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985)).

Courts have utilized this deferential rational relationship standard when determining the constitutionality of social welfare legislation that inquires into marital status or family composition. *See* Bowen, 483 U.S. at 601–603, 107 S.Ct. at 3017–3018 (law requiring all dependent minor siblings living with an AFDC recipient to be included in the filing unit constitutional under rational relationship standard); *Lyng v. Castillo*, 477 U.S. 635, 638–39, 106 S.Ct. 2727, 2729–30, 91 L.Ed.2d 527 (1986) (constitutionality of law requiring parents, children, and siblings to be considered a single Food Stamp household determined under rational relationship standard); *Califano v. Jobst*, 434 U.S. 47, 53, 98 S.Ct. 95, 99, 54 L.Ed.2d 228 (1977) (law terminating Social Security Disability benefits of a disabled dependent child who marries a person who is not entitled to benefits, while continuing benefits of a disabled dependent child who marries a person who is eligible is rational).

For example, in *McElrath v. Califano*, 615 F.2d 434 (7th Cir.1980) an applicant for the federal-state AFDC program challenged the requirement that she supply the Social Security numbers of all of her children as a violation of her right to privacy. The United States Court of Appeals held that the constitutional guarantee of the right to privacy only applied to "fundamental rights" and that welfare was not such a right. *McElrath*, 615 F.2d at 440. That court found that the case was not concerned, "with a decision impacting on the privacy of the appellants on the magnitude of criminal sanctions or an absolute prohibition on the appellant's conduct." *Id.* The Court of Appeals further held that the regulation concerned a condition of AFDC eligibility and the only sanction for not complying was to forgo certain government benefits. *Id.* The Court of Appeals ultimately determined that the proper level of scrutiny was the rational relationship test. *Id.*

These cases properly support the proposition that not every governmental intrusion into the marital or family affairs of an individual, particularly in the social welfare context, is an infringement on the constitutional right to privacy requiring a court to invoke strict scrutiny. In our complex society, government must intrude into our lives in a myriad of different ways to effectively administer its various programs. Legislatures must adopt rules, "in the course of constructing a complex social welfare system that necessarily deal[ ] with the intimacies of family life." *Jobst,* 434 U.S. at 54 n. 11, 98 S.Ct. at 100 n. 11.

In the instant case, our legislature has enacted Section 307(7) as part of a comprehensive statutory scheme for injured workers. Section 307(7) is essentially a provision that regulates eligibility for the worker's compensation program. Certainly the statute intrudes on Appellant's privacy as it requires the state to make inquiries into his living arrangements and marital status. This intrusion does not implicate any right fundamental to the concept of ordered liberty as defined by either this Court or the Supreme Court of the United States, however. It does not involve disclosure of confidential information or prohibit decisions related to marital or family matters. The statute only requires the Appellant to supply certain information regarding his marital status and living arrangements as a condition of eligibility for worker's compensation, and the only sanction is ineligibility for benefits. In accord with the deferential scope of review we must afford social welfare legislation, the proper level of scrutiny is the rational relationship test.[2]

The applicable standard of review is the rational basis test because the classification does not implicate suspect

---

**2.** This is not to suggest that a statute or regulation in the context of a social welfare program can never implicate a fundamental right of privacy. It is possible that a regulation criminalizing certain conduct or prohibiting certain conduct in the scope of a social welfare program would tread upon a recipient's fundamental right to privacy thus requiring a court to invoke heightened scrutiny.

classes or fundamental rights.[3]  In order for the classification to sustain constitutional attack under the rational basis test, "it need only be directed at the accomplishment of a legitimate governmental interest, and to do so in a manner which is not arbitrary or unreasonable." *Love v. Borough of Stroudsburg,* 528 Pa. at 326, 597 A.2d at 1139 (1991), citing *Fischer v. Department of Public Welfare,* 509 Pa. 293, 502 A.2d 114 (1985).

"The purpose of the [Workmen's Compensation Act] is remedial in nature and designed to protect workmen and their dependents suffering economic damages from work-related injuries." *Bethenergy Mines v. Workmen's Compensation Appeal Board,* 524 Pa. 235, 240, 570 A.2d 84, 86 (1990). Section 307(7) provides for the termination of benefits when the dependent of a deceased claimant either remarries or is living in a meretricious relationship.  Benefits are terminated to both remarried spouses and those in meretricious relationships under the assumption that the new relationship will ease the economic loss caused by the death of a former spouse. This legislative scheme treats both remarried dependents and those engaging in meretricious relationships the same and rationally promotes the governmental interest of judicious distribution of worker's compensation benefits.

The basis of Appellant's equal protection argument is that part of the statute awards remarried dependents a lump sum payment equivalent to 104 weeks of benefits, yet denies a dependent engaging in a meretricious relationship any further benefits.  "Marriage is one of the basic civil rights of man fundamental to our very existence and survival." *Loving,* 388 U.S. at 12, 87 S.Ct. at 1823 (quoting *Skinner,* 316 U.S. at 541,

3. In his dissent, Mr. Justice Flaherty maintains that our decision in *Fabio* requires heightened scrutiny in the instant case.  First, I would disagree with Mr. Justice Flaherty that the cases cited in *Fabio (Loving, Skinner, Pierce* etc.) support the assertion that the Petitioner here has a fundamental right to privacy for the reasons discussed above.  Second, I would note that we did not use the compelling interest test in *Fabio.* We found that the law was "hazy" as to the appropriate level of scrutiny.  *Fabio,* 489 Pa. at 324, 414 A.2d at 90.  We held that even assuming the "strictest of scrutiny", the government body had a compelling interest in enforcing its regulation.  *Id.*

62 S.Ct. at 1113). Our law has long recognized the importance of marriage and has extended benefits and protections to those engaged in a marital relationship that are not available to those who choose to remain unmarried. In the areas such as taxation, property, and wills and estates, our law clearly distinguishes between those who are married and those who are unmarried. There is a rational basis for this distinction because the legislature is properly concerned with fostering the institution of marriage in our society. Whether this statute is the wisest or best means to accomplish this legitimate purpose is not for us to determine. The statute is a rational means to accomplish this end, and that is sufficient for the purposes of equal protection analysis.[4]

The order of the Commonwealth Court is affirmed.

FLAHERTY, J., files a Dissenting Opinion.

MONTEMURO, J., is sitting by designation as Senior Justice pursuant to Judicial Assignment Docket No. 94 R1800, due to the unavailability of Mr. Justice Larsen, see No. 127 Judicial Administration Docket No. 1, filed October 28, 1993.

FLAHERTY, Justice, dissenting.

I dissent. In *Fabio v. Civil Service Commission*, 489 Pa. 309, 414 A.2d 82 (1980), this court stated that the right to privacy "encompasses protection from governmental interference in:

---

**4.** The Appellant has asserted also that Section 307(7) violates Article 3, Section 18 of the Pennsylvania Constitution. In *DeJesus v. Liberty Mutual Insurance Company*, 439 Pa. 180, 268 A.2d 924 (1970), we held that the purpose of Section 18 was to permit the Legislature to enact a workmen's compensation program, but to preclude the enactment of general legislation covering injuries other than those arising in the course of employment. The Appellant argues that if Section 18 had not been enacted, he would have had the right to collect a judgment against his deceased wife's employer that could not have been forfeited on the basis of his subsequent living arrangements. This is not a challenge to the validity of Section 307(7) but to the Legislature's authority to enact the statutory scheme of workmen's compensation benefits under the state constitution. Clearly, the termination of Appellant's benefits under Section 307(7) of the Act does not violate Article 3, Section 18.

"... activities relating to marriage, *Loving v. Virginia*, 388 U.S. 1, 12, [87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010] (1967); procreation, *Skinner v. Oklahoma*, 316 U.S. 535, 541–542, [62 S.Ct. 1110, 1113–1114, 86 L.Ed. 1655] (1942); contraception, *Eisenstadt v. Baird*, 405 U.S. [438] at 453–454, [92 S.Ct. 1029 at 1038–1039, 31 L.Ed.2d 349]; id., at 460, 463–465 [92 S.Ct. at 1042, 1043, 1044] (White J., concurring in result); family relationships, *Prince v. Massachusetts*, 321 U.S. 158, 166, [64 S.Ct. 438, 442, 88 L.Ed. 645] (1944); and child rearing and education, *Pierce v. Society of Sisters*, 268 U.S. 510, 535 [45 S.Ct. 571, 573, 69 L.Ed. 1070] (1925); *Meyer v. Nebraska* supra [262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)]. *Roe v. Wade*, 410 U.S. at 153, 93 S.Ct. at 726–727.

"Normally, once a court finds that an individual has a constitutionally protected right to privacy to engage in a course of conduct, the government's regulation limiting this right may only be justified by a 'compelling state interest.' "

489 Pa. at 323, 414 A.2d at 89.

Incredibly, the majority finds that Section 307(7) of the Workmen's Compensation Act does not implicate the constitutional right to privacy because although the provisions of the act may terminate an economic benefit, the individual is, nonetheless, free to make any choice he will concerning his living arrangements. In other words, although government may not be able to prohibit one person from living with another, it is free to withhold certain otherwise entitled financial benefits from a person who lives in a relationship of which government does not approve.

This analysis simply confuses the issues, which are well defined by our holding, cited above, in *Fabio*. The issues are whether privacy is implicated in McCusker's choice to live in an unmarried relationship with a woman, and, if it is, whether government has a compelling interest in regulating this conduct.

The answer to the first question is that privacy is certainly implicated, as the several citations indicate, in intimate rela-

tionships between the sexes. The answer to the second question is that government has no compelling interest whatsoever in regulating such relationships for the purposes of encouraging the formulation of some types of relationships and discouraging others by paying or withholding financial benefits which would otherwise be available. The majority's endorsement of such social engineering, in my view, is from another age.

I would reverse Commonwealth Court, and would hold that Section 307(7) of the Workmen's Compensation Act is unconstitutional insofar as it allows the termination of benefits payable to those engaged in what is termed "meretricious" relationships.