598 A.2d 1071

**Linda GAMBLE, Guardian of Paul M. and Matthew L. Gamble, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (BURRELL CONSTRUCTION AND SUPPLY CO.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted June 28, 1991.

Decided Oct. 28, 1991.

278

Timothy J. McCormick, for petitioner.

Nancy M. Harris, for respondent.

Seymour A. Sikov and Timothy P. O'Brien, for intervenor Alyce K. Gamble.

Before CRAIG, President Judge, SMITH, J., and SILVESTRI, Senior Judge.

SMITH, Judge.

Linda Gamble (Petitioner) seeks review of an order of the Workmen's Compensation Appeal Board (Board) which reversed the referee's decision to terminate widow's benefits to Alyce K. Gamble (Widow), surviving widow of Lester E. Gamble, (decedent), under The Pennsylvania Workmen's

Compensation Act (Act).[1] Issues raised for review are whether the referee's decision to terminate widow's benefits was supported by substantial and competent evidence; whether it is within the Board's discretion to reverse the termination of widow's benefits; whether the Board erred in failing to address the matter of counsel fees of the Petitioner; and whether the Board erred in its apportionment of death benefits between Petitioner and Widow.

On October 30, 1984, the decedent, an employee of Burrell Construction and Supply Company (Burrell), sustained work-related injuries which resulted in his death. At the time of his death, the decedent was married to and living with Widow. Decedent was also survived by two minor children, Paul M. and Matthew L. Gamble, who were residing with Petitioner, decedent's first wife.

On December 27, 1984, Widow, Petitioner, and Burrell, through its carrier Bituminous Insurance Company (Bituminous), executed an agreement for compensation for death. Since it was unclear as to how the compensation benefits of $320 should be divided between the claimants, it was agreed that the amounts would be divided equally between Widow and Petitioner, pending the outcome of a review petition to be filed on behalf of Burrell. The petition, filed by Burrell on December 10, 1984, requested that an order as to the proper allocation of benefits between Widow and Petitioner be entered after testimony was taken.

The referee's order, which allocated the benefits in a manner inconsistent with the parties' agreement, was appealed by Petitioner and Burrell to the Board which remanded this matter for further hearings and for an order on the issue of the allocation of benefits. However, prior to any further disposition of the initial review petition, Burrell filed a second review petition on May 26, 1986, claiming that Widow had allegedly begun a meretricious relationship in August 1986 with Paul Orgovan. The second petition requested that Widow's benefits be terminated in accordance with Section 307 of the Act, which provides in relevant part

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1031.

that "if upon investigation and hearing, it shall be ascertained that the widow ... is living with a man ... in meretricious relationship and not married ... the board may order the termination of compensation payable to such widow...." 77 P.S. § 562. On October 13, 1989, the referee issued an order wherein he terminated Widow's benefits, finding that she was living with Orgovan in a meretricious relationship. Widow then appealed to the Board.

The Board concluded that the self-serving hearsay testimony of a witness for Bituminous was not substantial and competent evidence upon which to base a finding of a meretricious relationship, and consequently reversed the referee's decision to terminate Widow's benefits. The Board awarded to Widow benefits of $244.80 per week and to Petitioner $75.20 per week on behalf of decedent's two minor children. Petitioner filed a petition for review to this Court from the Board's order and Widow filed a notice of intervention.

The referee's decision to terminate Widow's benefits because of an alleged meretricious relationship was based on testimony given by the claims manager for Bituminous, Ronald Magistri, over the objection of counsel for Widow. Magistri, through John Wersing, the personnel manager for Burrell, had arranged a meeting with Orgovan in May 1986 at Wersing's offices. Magistri did not record Orgovan's statements, took no notes at the time of the meeting which lasted approximately thirty-five minutes, and did not take a written statement from Orgovan even though he indicated a willingness to provide one. Magistri claimed that approximately ten minutes following his meeting with Orgovan, he wrote down a question which he purportedly asked of Orgovan: "do you and Alyce simply do all the things married people do in this relationship?" Magistri claimed Orgovan responded affirmatively to this question.

Orgovan had been called as a witness on behalf of Bituminous. It was on direct examination that he specifically denied having been asked during the meeting with Magistri if he "lived as husband and wife" with Widow. He also

denied being asked whether he had ever had sexual relations with Widow. After having called Orgovan, Bituminous then attempted to impeach its own witness through the testimony of Magistri.

At the outset, this Court's scope of review is limited to determining whether there has been a constitutional violation, an error of law, or whether findings of fact are supported by substantial evidence of record. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988). "Substantial evidence" is that which constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Hess Bros. v. Workmen's Compensation Appeal Board (Gornick)*, 128 Pa.Commonwealth Ct. 240, 563 A.2d 236 (1989). Petitioner argues that the Board erroneously reversed the referee because the referee's findings were supported by substantial evidence.

The referee factually determined that Widow was living in a meretricious relationship with Paul Orgovan. The referee's decision was, in part, based upon undisputed testimony that Widow, her two daughters, and an unmarried male reside together in a home, title to which is held by Widow and the unmarried male; that Widow and Orgovan maintain at least one joint bank account; that Widow cooks for the members of the household; and that Widow and Orgovan maintain a social relationship.

Absent the testimony of Magistri and Wersing, who merely corroborated Magistri's testimony, the undisputed testimony noted above would not alone support the referee's conclusion of the existence of a meretricious relationship. Indeed, in *Hess Bros.* the undisputed testimony concerning the alleged meretricious relationship was virtually identical. The Board in *Hess Bros.* determined that there had not been a scintilla of relevant evidence on the ultimate issue of whether the relationship was carnal in nature and concluded that the referee's decision was not supported by substantial evidence. This Court affirmed the Board's decision.

■ The decision in this case turns on the testimony of Magistri and Wersing. Faced with its failure to present any direct testimony as to a sexual relationship between Widow and Orgovan, Bituminous called Magistri as a witness. Since Magistri's testimony was clearly offered to impeach Orgovan's testimony, such offer fails because, absent compelling circumstances, a party is bound by the testimony of its own witnesses and is not permitted to impeach such witnesses. *Commonwealth v. Bartley*, 395 Pa.Superior Ct. 137, 576 A.2d 1082 (1990); *Commonwealth v. McKendrick*, 356 Pa.Superior Ct. 64, 514 A.2d 144 (1986), *appeal denied*, 514 Pa. 629, 522 A.2d 558 (1987).

■ An exception to the rule may be had when a party is surprised by unfavorable testimony of its witness. *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986); *Commonwealth v. McCauley*, 403 Pa.Superior Ct. 262, 588 A.2d 941 (1991). Surprise must be invoked by the party, yet no such claim was made by Bituminous. Therefore, the surprise exception cannot be applied here, and Bituminous' effort to present purported contradictory statements of its own witness is not permitted under the record established in this matter.[2] Consequently, the referee lacked substantial evidence to find that a meretricious relationship existed in the absence of any direct evidence on the issue of a carnal

2. In recent years the courts of this Commonwealth have been liberal in allowing a party to impeach its own witness with prior inconsistent statements *"when it is believed that the interest of truth and justice so require."* *Brady*, 510 Pa. at 134, 507 A.2d at 72 (emphasis in original). However, the admission of Magistri's testimony as substantial evidence would not be in the interest of truth and justice because it is undeniably hearsay (the witness in *Brady* gave a prior tape-recorded statement which was inconsistent with trial testimony). While otherwise admissible prior inconsistent statements may be used as substantive evidence in a proceeding, *Brady*, statements riddled with hearsay, as in the matter *sub judice*, are wholly unreliable and are therefore inadmissible. *Durkin v. Equine Clinics, Inc.*, 376 Pa.Superior Ct. 557, 546 A.2d 665 (1988), *appeal denied*, 524 Pa. 608, 569 A.2d 1367 (1989). Furthermore, while hearsay testimony may be admissible in a worker's compensation proceeding to shed additional light on evidence already received, hearsay cannot be the sole basis of an award. *Thomas v. Workmen's Compensation Appeal Board*, 57 Pa.Commonwealth Ct. 117, 425 A.2d 1192 (1981).

relationship between Widow and Orgovan. Thus, the Board did not err in reversing the referee's decision.

■ Beyond the question of admissibility of evidence, it should also be pointed out that the discretion with respect to termination of widow's benefits due to a meretricious relationship lies solely with the Board. *See BethEnergy Mines, Inc. v. Workmen's Compensation Appeal Board (Sadvary)*, 524 Pa. 235, 570 A.2d 84 (1990) (the use of the word "may" in Section 307 of the Act, 77 P.S. § 562, granted discretion to the Board).

■ Further issues raised on appeal concern whether the Board erred in failing to address counsel fees of Petitioner and in its apportionment of death benefits between Petitioner and Widow. On the issue of counsel fees, Petitioner is correct that the Board did not address this matter although a counsel fee award was entered for Widow. As this Court cannot review this question without findings and a determination by the Board, a remand is mandated for that purpose.

■ With respect to the issue of apportionment of death benefits, Petitioner contends that if it is determined that Widow is not involved in a meretricious relationship, then the death benefits should be divided equally between the three interested parties, *i.e.*, two minor children and Widow. It should be noted that the Board in its discretion may, under Section 307 of the Act, direct the compensation payable to children or widows. In *Westinghouse Elevator Co. v. Workmen's Compensation Appeal Board (Lynch Kivlen, Lynch, Jr.)*, 137 Pa.Commonwealth Ct. 293, 585 A.2d 1157 (1991), this Court upheld the referee's denial of a decedent's ex-wife's claim petition on behalf of the decedent's two minor children, thus awarding widow's benefits to the decedent's wife at the time of his death. The children were denied benefits because, as this Court reasoned, the widow's benefits left nothing for them. As for Petitioner here, the Board could have denied benefits altogether. However, since there is no direction provided by the Act in the specific situation at hand, the Board may

effect the humanitarian aims of the Act when borderline questions of interpretation are involved. *Id.* It did so with respect to Petitioner in distributing a portion of the death benefits to her on behalf of the minor children. Accordingly, the Board's formula of apportionment must remain intact.

## ORDER

AND NOW, this 28th day of October, 1991, the order of the Workmen's Compensation Appeal Board dated December 3, 1990, which awards death benefits to Alyce K. Gamble and to Linda Gamble on behalf of the decedent's two minor children, Paul M. and Matthew L. Gamble, is hereby affirmed. The matter of Linda Gamble's counsel fees is remanded to the Board for disposition.

Jurisdiction relinquished.