v.

**WORKERS' COMPENSATION APPEAL BOARD (Oley Township), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 22, 2002.
Decided Oct. 29, 2002.

---

Robert P. Grim, Kutztown, for petitioner.

Douglas G. Cappellini, Allentown, for respondent.

BEFORE: FRIEDMAN, J., LEAVITT, J., and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

J.H. (Claimant) petitions for review of an October 24, 2001 order of the Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ) to terminate Claimant's compensation benefits because she entered into a marriage-like relationship with a man not her husband.

Claimant is the widow of Dallas H., who died in an accident on June 21, 1983, while working for Oley Township (Employer). As a result, Claimant and her son, Sean H., were awarded workers' compensation benefits.[1] On December 23, 1998, Employer filed a petition to terminate Claimant's benefits as of December 28, 1988 for the stated reason that she was living with Stephen G. in a meretricious relationship, which is a basis to terminate compensation under Section 307(7) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 562, as is the act of remarriage.

At the hearing before the WCJ, Employer presented the following documentary evidence: 1) a deed, dated December 7, 1989, conveying property in Breinigsville, Pennsylvania, to Claimant and Stephen G. as joint tenants in the entirety with a right of survivorship; 2) a mortgage note signed on December 15, 1989, by Claimant and Stephen G.; 3) a copy of Stephen G.'s voter registration application, noting his address at the property held jointly with Claimant; and 4) a 1998 real estate tax bill listing Stephen G. and Claimant as the taxpayers for their jointly-held property.

Claimant was called by Employer as of cross-examination and testified that she and Stephen G. had a child together, Dylan G., born on September 28, 1989.[2] Claimant further admitted that she currently lives with Stephen G. at their jointly owned home.

■ Employer also presented the deposition testimony of Claimant's gynecologist and obstetrician, Jeffrey B. Frank, M.D. (Dr. Frank).[3] Dr. Frank testified to Claimant's medical history from 1983, when he began treating her, through 1999. At a visit on February 7, 1989, Claimant told Dr. Frank that she and her live-in "boyfriend or possible fiancé" of six months were thinking about having a child; on September 28, 1989, Claimant delivered her son Dylan G. Dr. Frank testified that he understood Stephen G. to be Claimant's sexual partner[4] and the father of her child, Dylan.[5] Dr. Frank prescribed birth control for Claimant from November 9, 1989, after she delivered Dylan, through September 24, 1999.[6] Dr. Frank stated

---

1. The WCJ ordered Employer to pay Sean H. benefit checks until he reaches the age of 18 or if enrolled in a full-time accredited institution until age 23. The Board affirmed. The Board's order awarding benefits to Sean H. is not the subject of this appeal.

2. Employer also admitted into evidence Dylan G.'s birth certificate, which lists Stephen G. as his father and Claimant as his mother.

3. At the hearing before the WCJ, Claimant objected to this deposition testimony alleging that:
   (1) it violated the patient-doctor privilege and (2) was taken after the WCJ's deadline. However, Claimant did not raise the issue of physician-patient privilege in her appeal to the Board or her petition for review to this Court. Board Opinion at 6, Reproduced Record 323a (R.R. ——). Her petition for review states: The Workers' Compensation Appeal Board committed an abuse of discretion or error of law in holding that various and numerous procedural violations committed by Defendant/Appellee are either excused or do not require reversal.
   This is not sufficient to preserve the privilege claim, and Claimant's Brief does not develop the physician-patient privilege issue. The issue is waived.

4. In his medical notes, Dr. Frank wrote that Claimant's sexual partner is Stephen G. R.R. 181a, 187a.

5. Dr. Frank testified that according to a health history summary of Claimant dated February 7, 1989, Stephen is listed as the father of Claimant's child. R.R. 145a–146a.

6. Dr. Frank prescribed birth control to Claimant on two occasions after Employer filed its petition: on March 24, 1999 and on September 24, 1999. R.R. 166a, 167a, 169a.

that he prescribed Claimant birth control specifically for the purpose of preventing pregnancy, as opposed to another medical reason. During the visits in 1999, Claimant indicated to Dr. Frank that she was using the prescriptions.

■ At the conclusion of the hearing, the WCJ found that Claimant was involved in a meretricious relationship from December 28, 1988 through 1999. The WCJ made the following ruling:

The Employer has sustained its burden of proving by substantial, competent and credible evidence that the Claimant has been involved in a meretricious relationship, and not married, and engaging in a sexual relationship since at least December 28, 1988 through the present. It is clear from the evidence presented by the Employer that a reasonable person could conclude that the Claimant has been involved in a meretricious relationship with [Stephen G.] since at least December 28, 1988 and up through the present time.

As a result, the WCJ terminated Claimant's benefits effective December 28, 1988. The Board affirmed. Claimant then petitioned for our review.[7]

Claimant contends that the Board erred as a matter of law by terminating benefits as of December 28, 1988, the date on which

the WCJ found that the meretricious relationship began.[8] She asserts that December 23, 1998, the date on which Employer filed its petition, is the earliest date on which benefits could terminate. Further, Claimant contends that the Board's conclusion that she was living with a man in a meretricious relationship on December 23, 1998 is not supported by substantial evidence.[9]

■ Section 307(7) of the Act provides, *inter alia,* that

Should any dependent of a deceased employee die or remarry, or should the widower become capable of self-support, the right of such dependent or widower to compensation under this section shall cease except that if a widow remarries, she shall receive one hundred ° four weeks compensation at a rate computed in accordance with clause 2. of section 307 in a lump sum after which compensation shall cease: Provided, however, That if, upon investigation and hearing, it shall be ascertained that the *widow or widower is living with a man or woman, as the case may be in a meretricious relationship and not married,* or the widow living a life of prostitution, the board may order the termination of compensation payable to such widow or widower.

7. This Court's scope of review is limited to determining whether there has been a constitutional violation, an error of law, or whether findings of fact are supported by substantial evidence of record. *Gamble v. Workmen's Compensation Appeal Board (Burrell Construction and Supply Co.),* 143 Pa.Cmwlth. 277, 598 A.2d 1071 (1991).

8. The evidence showed that this was the date that Claimant began living in a meretricious relationship with Stephen G. because it was when Claimant became pregnant with Dylan ·G., approximately nine months before his birth on September 28, 1989. R.R. 53a. Dr. Frank testified that on February 7, 1989,

Claimant informed him that she had been living with Stephen G. for six months.

9. Claimant also contends that Section 307(7) of the Act violates the Equal Protection Clause of the U.S. and Pennsylvania Constitutions because it discriminates against a widow who lives in a meretricious relationship with a man but not a widow who lives in a meretricious relationship with a woman. The Pennsylvania Supreme Court, however, upheld the constitutionality of Section 307(7) in *McCusker v. Workmen's Compensation Appeal Board (Rushton Mining Co.),* 536 Pa. 380, 639 A.2d 776 (1994).

77 P.S. § 562 (emphasis added). The employer must prove that on the date of filing the termination petition the "widow or widower *is* living with a man or woman, as the case may be in a meretricious relationship."[10] *Todd v. Workmen's Compensation Appeal Board (NCR Corp. and National Union/Crawford & Co.)*, 547 Pa. 687, 692 A.2d 1086 (1997).

■ A meretricious relationship has been defined as two individuals living together in a carnal way without benefit of marriage.[11] *Campbell v. Workmen's Compensation Appeal Board (Hards Construction Co.)*, 695 A.2d 976, 979 (Pa.Cmwlth. 1997). The employer must produce direct evidence of a carnal[12] relationship to meet its burden. *Gamble v. Workmen's Compensation Appeal Board (Burrell Construction and Supply Co.)*, 143 Pa.Cmwlth. 277, 598 A.2d 1071 (1991). Here, Employer had to prove that on the date Employer filed its termination petition Claimant was: (1) living with Stephen G., (2) in a sexual relationship, and (3) without being married to him.

■ Employer's evidence satisfied all three requirements. It showed by Claim-

ant's admission and by relevant documentary evidence, such as the deed to their home, that Claimant and Stephen G. were living together on December 23, 1998, the date on which Employer filed its termination petition. Employer also showed by Claimant's admission that Stephen G. was the father of her child and by Dr. Frank's deposition testimony[13] that after the birth of Dylan G. he continued to prescribe Claimant birth control for the purpose of preventing pregnancy, that the relationship between Claimant and Stephen G. was sexual in nature. Finally, Employer showed by Claimant's description of Stephen G. as a "friend" and by the deed to their home, describing Claimant and Stephen G. each as a single person, that they were not married as of December 23, 1998. Thus, the WCJ's conclusion that Claimant was living with Stephen G. in a sexual relationship, without being married to him, on December 23, 1998, is supported by substantial, competent evidence. The Board's affirmance of the WCJ was appropriate.

Because Employer demonstrated that Claimant's relationship with Stephen G.

---

**10.** Section 307(7) of the Act, 77 P.S. § 562. This provision was added by a 1939 amendment. *See* Act of June 21, 1939, P.L. 520.

**11.** The dissent suggests that this definition is the invention of the majority. In point of fact, the definition has been used by Pennsylvania's appellate courts for many years. *See Pegee v. Ricchini*, 140 Pa.Super. 56, 12 A.2d 830 (1940). This Court has also consistently followed this definition. *Hess Brothers v. Workmen's Compensation Appeal Board (Gornick)*, 128 Pa.Cmwlth. 240, 563 A.2d 236 (1989); *Nevius v. Workmen's Compensation Appeal Board*, 52 Pa.Cmwlth. 418, 416 A.2d 1134 (1980).

**12.** The dissent did not choose the first definition of "carnal" found in the source cited, but a rather extreme definition. Another source, WEBSTER'S II NEW COLLEGE DICTIONARY 169 (1995) defines "carnal" as follows:

1. Relating to sensual desires and appetites.
2. Earthly: temporal.

As used by our appellate courts, it appears that "carnal" means simply "sexual."

**13.** This Court in *Doe v. Workmen's Compensation Appeal Board (USAIR, Inc.)*, 653 A.2d 715, 717 (Pa.Cmwlth.1995), held that in instances where a claimant is seeking compensation benefits in a worker's compensation matter, the doctor-patient privilege does not apply. There is no reason why, as the dissent suggests, that this should be limited to the injured worker's medical records. Where medical evidence is relevant to the Employer's burden of proof, it should be admissible. In any case, as noted in footnote 3, the privilege issue was not preserved. This is not to say that the majority endorses the scope of Dr. Frank's deposition.

began at least by December 28, 1988, the WCJ ordered benefits terminated on that date. This is consistent with precedent. In *Jones Motors v. Workmen's Compensation Appeal Board*, 51 Pa.Cmwlth. 210, 414 A.2d 157, 159 (1980),[14] we held that where the employer proves that claimant engaged in a meretricious relationship, the appropriate remedy is to terminate benefits during the period of the relationship. *See also Hess Brothers v. Workmen's Compensation Appeal Board (Gornick)*, 128 Pa.Cmwlth. 240, 563 A.2d 236 (1989).

However, Claimant contends that the proper date for termination of benefits is the date that Employer filed the termination petition, not the date the relationship commenced. She bases this argument on the Supreme Court's ruling in *Todd*. However, *Todd* did not address the date on which benefits could be terminated but only the date as of which the relationship had to be demonstrated. It held that the employer had to prove that a meretricious relationship continued to exist as of the date it filed its termination petition. *Todd*, 547 Pa. at 691, 692 A.2d at 1087.[15]

Although Section 307(7) of the Act does not expressly state when the termination of benefits should occur,[16] the Pennsylvania Supreme Court has provided direction. In *McCusker v. Workmen's Compensation Appeal Board (Rushton Mining Co.)*, 536 Pa. 380, 639 A.2d 776 (1994), the Supreme Court held that

> Section 307(7) provides for the termination of benefits *when the dependent of a deceased claimant either remarries or is living in a meretricious relationship.* Benefits are terminated to both remarried spouses and those in meretricious relationships under the assumption that the new relationship will ease the economic loss caused by the death of the former spouse. *This legislative scheme treats both remarried dependents and those engaged in meretricious relationships the same and rationally promotes the governmental interest of judicious distribution of worker's compensation benefits.*

*McCusker*, 536 Pa. at 391, 639 A.2d at 781 (emphasis added). To hold otherwise would encourage persons not to remarry in order to continue benefits. Thus, Section 307(7) of the Act was intended to encourage, not discourage, the institution of mar-

---

**14.** In *Jones Motors*, the claimant lived in a meretricious relationship from July 1, 1977 to June 1, 1978, but she terminated the relationship as of June 2, 1978. The referee and the Board suspended benefits from July 1, 1977 through June 1, 1978 and reinstated benefits on June 2, 1978 when the relationship ceased. This Court held that termination of benefits is the only available remedy and reversed the Board's order to reinstate benefits on June 2, 1978. Thus, the Court's order in effect terminated benefits as of July 1, 1977, the date the meretricious relationship commenced. *Jones Motors*, 414 A.2d at 159. Likewise here, Claimant's benefits should be terminated from the date that the meretricious relationship commenced, December 23, 1988.

**15.** *Todd* also differs factually from this case because the claimant sought a lump sum distribution of benefits, or widow's dower, under Section 307(7). *Todd*, 547 Pa. at 689, 692 A.2d at 1087. Here, Claimant seeks continued benefit payments.

**16.** Section 307(7) of the Act provides that, "the board may order the termination of compensation payable to such widow or widower." 77 P.S. § 562. Section 307(7) gives the Board discretion to determine whether payments should be terminated but does not give direction as to when the payments should be terminated. This lack of direction raises a question of delegation of legislative authority, but that issue is not before us. In any case, our Supreme Court has concluded that using economic hardship as the standard satisfies Pennsylvania Constitution's separation of powers. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Sadvary)*, 524 Pa. 235, 240, 570 A.2d 84, 86 (1990).

riage. *McCusker*, 536 Pa. at 392, 639 A.2d at 781. Because Section 307(7) of the Act terminates benefits for those in a marriage-like (or "meretricious") relationship [17] the same as if they were married, it eliminates the economic incentive not to remarry. The date a marriage begins is the date on which benefits terminate; to be consistent, the date on which the marriage-like relationship begins should provide the termination date.

In this case, Employer produced substantial evidence that Claimant had been engaged in a meretricious relationship since December 28, 1988. Whatever reason Claimant had not to marry Stephen G., Section 307(7) of the Act ensures that the continued collection of benefits will not be a factor in her reasoning process. The WCJ terminated Claimant's benefits as of the date that the Employer proved her meretricious relationship commenced, and the Board affirmed. We hold that the Board correctly affirmed the termination of Claimant's benefits as of December 28, 1988.

For these reasons, the decision and order of the Board is affirmed.

### ORDER

AND NOW, this 29th day of October, 2002, the order of October 24, 2001, of the Workers' Compensation Appeal Board in the above-captioned case is hereby affirmed.

DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent from the majority's opinion in this matter.

At the outset, I must register my dismay that the outcome of this case must turn on the arcane notion of "meretricious relationship." Webster's Third New International Dictionary 1413 (1993) (emphasis added) defines the term meretricious as "of or relating to a *prostitute;* having a *harlot's traits.*" The term carries extremely pejorative connotations, and its usage comes from another time in history. Both the dictionary definition and the context in which the term is used in section 307(7) of the Workers' Compensation Act (Act),[1] suggest that a couple's decision to

---

**17.** The dissent criticizes the legislature's use of the word "meretricious" and the statutory concept that living together in a sexual relationship out of wedlock is "meretricious." We do not agree with the choice of words in Section 307(7) of the Act, but, we must uphold duly enacted statutes and within the bounds of binding precedent. This Court has held that the "... legislature is properly concerned with fostering good morals by encouraging legally recognized and responsible family relationships and discouraging the forming of illicit relationships." *Nevius*, 416 A.2d at 1137. The more recent *McCusker* holding by the Supreme Court holds that the purpose of Section 307(7) is to level the playing field between widows who remarry and those who live in a marriage-like relationship; benefits terminate in either situation. Whether this legislation is intended to foster a moral code not consistent with the "reality of modern human relationships" is a question to be addressed to the General Assembly. Section

307(7) of the Act may merit revisiting by our legislature for another reason. Upon becoming "capable of self-support," a widower's benefits terminate, but a widow's benefits continue notwithstanding her ability to support herself. This does not reflect "the reality of modern human relationships" where both spouses often contribute to the economic well-being of a family.

**1.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 562. This section provides in pertinent part that:

if, upon investigation and hearing, it shall be ascertained that the widow or widower is living with a man or woman, as the case may be, in meretricious relationship and not married, or the widow living a life of prostitution, the board may order the termination of compensation payable to such widow or widower....

live together and have a sexual relationship out of wedlock is akin to prostitution. This is a cruel and unfair suggestion; moreover, it does not reflect the reality of modern human relationships. I look forward to the day that our General Assembly updates this portion of the Act.

To make matters worse, the majority chooses to define "meretricious relationship" as "two individuals living together in a carnal way without benefit of marriage."[2] (Majority op. at 190, emphasis added.) The word "carnal" is defined in a number of ways, including "marked by sexuality that is often frank, *crude and unrelieved by higher emotions*," and "relating to or given to *crude bodily pleasures*."[3] Webster's Third New International Dictionary 340 (1993) (emphasis added). J.H. and Stephen G. have been together for years. They have a child together. They own property together. They have chosen not to marry, but it is obvious that they have built a life together for themselves, and it is reasonable to assume that these two people love each other. They should be treated with a commensurate degree of respect. It saddens me that, in the course of dissecting this relationship between J.H. and Stephen G., the majority would in any way suggest that this relationship should be labeled "carnal" without any consideration of the other aspects of this enduring relationship.

In short, and with my apologies to J.H. and Stephen G., it is only because of the prescribed legislative terminology that I continue to use the terms "meretricious" and "carnal" in this dissenting opinion.

Next, I disagree with the majority that Oley Township (Employer) met its burden of proof in this matter. As the majority correctly notes, Employer had the burden of proving that J.H. was "living in meretricious relationship" as of the date Employer filed its termination petition, which, in this case, was December 23, 1998. The majority then proceeds to detail all of Employer's evidence, concluding that such evidence, specifically, the testimony of J.H.'s gynecologist regarding J.H.'s use of contraception, constituted substantial evidence to support the WCJ's finding that J.H. was, indeed, "living in meretricious relationship" at the relevant time. However, this conclusion is based on the premise that the deposition testimony of J.H.'s gynecologist was properly admitted before the WCJ. I disagree that admission of such evidence was proper.

Employer presented the deposition testimony of J.H.'s gynecologist, Jeffrey B. Frank, M.D. The WCJ admitted this testimony over Claimant's objections that, among other things, the deposition violated the patient-doctor privilege.[4] At this de-

2. The majority defends the definition by pointing out that Pennsylvania's appellate courts have used this definition for many years. The majority even cites a superior court case from 1940. (Majority op. at 190 n. 11.) This is precisely my point. It is no longer 1940, and the rule of law governing these situations should be updated.

3. The majority states that I have chosen the most extreme of dictionary definitions for the word "carnal." The majority offers two alternative definitions from Webster's II New College Dictionary. (Majority op. at 190 n. 12.) Nevertheless, the definitions offered above from Webster's Third New International Dictionary reveal the connotation of the word "carnal." Moreover, I note that the only other reported Pennsylvania appellate court opinion that relies upon Webster's II New College Dictionary for the meaning of words is one also authored by Judge Leavitt. *See C.F. v. Department of Public Welfare*, 804 A.2d 755 (Pa.Cmwlth.2002).

4. The majority states that J.H. waived the physician-patient privilege issue because she (1) did not raise the issue in her appeal to the WCAB, (2) did not raise the issue in her petition for review to this court, and (3) did

position, Employer's counsel elicited a detailed recounting of J.H.'s entire gynecological and obstetrical history from 1983 to 1999, an action which I consider repugnant and unnecessarily invasive. Employer's counsel questioned Dr. Frank about every time J.H. visited him, every gynecological problem J.H. experienced over that time period, every pap smear Dr. Frank performed on her, and every type of birth control Dr. Frank prescribed for her. I cannot overstate the inappropriate nature of eliciting and relying on this testimony.

In this Commonwealth, the physician-patient privilege is embodied in section 5929 of the Judicial Code, 42 Pa.C.S. § 5929, which states that:

> No physician shall be allowed, in any civil matter, to disclose any information which he [or she] acquired in attending the patient in a professional capacity, and which was necessary to enable him [or her] to act in that capacity, which shall tend to blacken the character of the patient, without consent of said patient, except in civil matters brought by such patient, for damages on account of personal injuries.

A plain reading of this general statutory prohibition against a physician's disclosure of confidential medical information without the patient's consent clearly establishes a single exception: instances where the patient has brought a civil matter for damages on account of *personal injuries*. An injured worker seeking workers' compensation benefits undoubtedly fits into this exception. *Doe v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 653 A.2d 715 (Pa.Cmwlth.), *appeal denied*, 541 Pa. 644, 663 A.2d 695 (1995). However, the situation here differs from the customary workers' compensation claim, and, thus, this exception does not apply.

J.H. is not the *patient* who suffered personal injuries. The *patient* who suffered personal injuries was J.H.'s late husband, Dallas H. There is no question that, had Dallas H. brought an action for workers' compensation benefits based on his June 21, 1983, injuries, the physician-patient privilege would not bar *Dallas H.'s physician* from providing any information acquired in the course of treating *Dallas H.* which might tend to "blacken the character" of *Dallas H.* without the prior consent of *Dallas H.* Unfortunately, Dallas H. suffered more than mere "personal injuries" on that fateful day; he died as a result of those injuries. J.H. became the derivative "claimant" in this matter only because her husband was killed instead of injured. It is a leap of logic to say that, because J.H. became the claimant by virtue of her husband's death, *J.H.'s medical information* should now be available to Employer in order to support a petition to *terminate* benefits that were awarded as a result of personal injuries suffered by *an entirely different person*.

I cannot believe that the General Assembly intended such an absurd and unjustified result. Suppose for a moment that Dallas H. had been killed in a *non-*work-related accident. If J.H. were to bring a civil action in a court of common pleas for wrongful death and loss of con-

---

not develop the issue in the argument portion of her brief. (Majority op. at 188 n. 3.) I disagree. In her appeal to the WCAB, J.H. argues that there is not "substantial evidence" to support the WCJ's finding of a meretricious relationship, and testimony protected by the physician-patient privilege does

not constitute "substantial evidence" to support a finding. Moreover, I note that J.H. specifically raises the physician-patient privilege issue in paragraph one of the petition for review and that J.H. develops the physician-patient privilege issue on page twelve of her brief.

sortium,[5] there is little doubt that the defendant would be entitled to obtain medical information about Dallas H.'s injuries and death in order to defend against the action. Would defendant also be entitled to unfettered access to J.H.'s medical information merely because she is the one bringing the action? The majority's interpretation of section 5929 would suggest so. However, the limited exception to the physician-patient privilege, i.e., civil actions brought as a result of personal injury, surely was intended to apply *only* to the medical information of the *person who was injured* and brought suit as a result of that injury. That is not this case.[6]

An employer seeking to terminate benefits under section 307(7) of the Act, 77 P.S. § 562, on the basis of a "meretricious relationship" has the burden of proving that the claimant was "living in meretricious relationship" as of the date the employer filed its termination petition. *Todd v. Workmen's Compensation Appeal Board (NCR Corp. and National Union/Crawford & Co.)*, 547 Pa. 687, 692 A.2d 1086 (1997). The majority notes that a "meretricious relationship" occurs whenever two unmarried persons are living together in a "sexual" and, thus, "carnal" way. If this is the case, Employer here had to show that, Claimant was (1) living with Stephen G. (2) in a "carnal" way (3) without being married to him (4) as of December 23, 1998. When questioned by Employer, Claimant testified that she lived with Stephen G. and that Stephen G. was Dylan's father. This testimony shows that Claimant and Stephen G. must have had a sexual relation-

ship approximately nine months before Dylan was born on September 28, 1989. However, this testimony did *not* establish that Claimant and Stephen G. had a sexual relationship as of December 23, 1998, more than ten years later. The fact that they had a child together in 1989 does not necessarily mean they still have a sexual relationship. Nor does the fact that they continue to live together. *See Campbell by Campbell v. Workmen's Compensation Appeal Board (Hards Construction Company)*, 695 A.2d 976 (Pa.Cmwlth.1997) (holding that claimant's relationship with her live-in partner could no longer be considered "meretricious" where they were no longer able to engage in sexual activity because of health problems). Here, Employer could have but did not question J.H. or any other witness about whether her relationship with Stephen G. continued to be of a "carnal" or "sexual" nature as of December 23, 1998. The *only* testimony Employer presented to this effect was Dr. Frank's testimony that he had prescribed birth control pills for Claimant for the purpose of contraception over this time period and that he understood Claimant's sexual partner to be Stephen G. Without Dr. Frank's testimony, which I believe was improperly admitted, the record is devoid of any evidence whatsoever to support a finding that the relationship between J.H. and Stephen G. was of a "carnal" nature as of December 23, 1998.

In summary, the WCJ erred in admitting Dr. Frank's testimony. Without Dr. Frank's testimony, Employer did not meet

---

5. *Cf. Kuney v. Benjamin Franklin Clinic*, 751 A.2d 662 (Pa.Super.2000).

6. The majority states that there is "no reason" why the physician-patient privilege should be limited to the injured worker's medical records. (Majority op. at 190 n. 13.) The reason is the plain language of the statute governing

the physician-patient privilege. The *only* exception to the privilege is where the patient brings a civil matter for damages on account of "personal injuries." 42 Pa.C.S. § 5929. This case does *not* involve a "personal injury" to J.H.'s reproductive system, so that the exception to the privilege would apply.

its burden of proving that J.H. was "living in meretricious relationship" as of December 23, 1998. Therefore, the WCJ's finding to that effect is unsupported by substantial evidence. For this reason, I would reverse.[7]

---

**7.** The majority suggests that the entire basis for this dissent is my belief that the statutory concept of a meretricious relationship does not reflect the reality of modern human relationships. The majority then explains the need to uphold our statutes and binding precedent. (Majority op. at 192 n. 17.) However, as indicated above, the basis for my dissent is the plain language of the statute governing the physician-patient privilege. As to whether the privilege applies in this case, there is no precedent on the matter.