**James ANTHONY, Deceased c/o Mary Anthony, Petitioners,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (ANDERSON BOX COMPANY, INC. and Highlands Insurance Company), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 21, 2003.

Decided April 4, 2003.

Reconsideration Denied June 12, 2003.

*peal Board (Department of Transportation),* 699 A.2d 1341 (Pa.Cmwlth.1997).

Michael W. Flannelly, York, for petitioner.

William J. Witte, Pittsburgh, for respondent.

BEFORE: COLINS, President Judge, LEADBETTER, Judge, McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Mary Anthony (Claimant), widow of deceased worker, petitions for review of an order of the Workers' Compensation Appeal Board (Board) affirming the decision of a Workers' Compensation Judge (WCJ) terminating Claimant's compensation benefits because she had entered into a meretricious relationship. We reverse.

Claimant is the widow of James Anthony, who died in an automobile accident in 1989. His death occurred while in the course and scope of his employment with Anderson Box Company, Inc. (Employer). As a result, Claimant began receiving workers' compensation benefits. On October 20, 1999, Employer filed a termination petition alleging that Claimant had entered into a meretricious relationship, which is a basis to terminate compensation under Section 307(7) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 562.

At the hearing before the WCJ, Mr. Noel Bruen, a private investigator, testified that he observed the Claimant's residence and established that Mr. Shelton Oster was spending the night there. Mr. Tim Chrispmen, also a private investigator, then set up surveillance at the residence. He observed Claimant come outside at 5:57 a.m. to feed her dogs. He also saw a male on the porch. He saw the male and the Claimant embrace twice and then the male departed in a truck at 6:09 a.m. He videotaped the contacts, which he characterized as two embraces and one

kiss. (R.R. at 25a–26a). The tape was played for the WCJ.

Claimant testified that she had been living in her residence for the past eight years and that Mr. Oster had moved in with her in February of 1998. She claimed he moved in because he was remodeling his house and his furnace broke. She stated that he remained until October, 1999,[1] at which time he returned to his own residence.

Claimant alleged that she never had sexual relations with Mr. Oster and had not had sex since her husband died. She maintained that Mr. Oster slept in a separate bedroom and she had no knowledge of Mr. Oster's sexual history. She also stated that she did not have any jointly held property with Mr. Oster.

Claimant was sixty years old at the time of the hearing and explained that she had not worked in the last ten years. Her last job was as a cook at the York County Prison and she resigned shortly after her husband's death. She claimed to have back pain, stomach problems and blood clots in her legs. Her current sources of income were $682.00 bi-weekly in workers' compensation payments, $187.00 monthly in social security disability and $716.00 monthly in social security benefits.

Claimant resides in a trailer with rooms constructed onto it. Her mortgage payment is $589.00 per month and her mortgage balance is $62,000.00. She also has a bank loan for over $10,000.00, and pays $300.00 per month on it. Claimant presented into evidence her general monthly bills and obligations.

Mr. Oster testified that he had worked at the York County Prison for the past sixteen years and knew Claimant since

1. The parties agree that Mr. Oster did not move out until after the filing of the termination petition.

that time. He explained that in the winter of 1998, he was having work done in the upstairs of his house when "the furnace blowed up on me." (R.R. at 83a). He then moved in with Claimant.

Mr. Oster testified that he never had sex with Claimant and that he has not been able to have sex in the past ten to twelve years, because he is unable to have an erection. He testified that his doctor gave him Viagra samples to try in June of 1998 and he tried the samples, but they did not work.

Dr. Oscar Murrillo, M.D. testified on behalf of Claimant as to his patient Mr. Oster. He explained that he had been treating Mr. Oster since 1994, at which time Mr. Oster was fifty years old. The doctor stated that Mr. Oster has Type II diabetes and underlying coronary artery disease.

Dr. Murrillo said he gave Mr. Oster some Viagra samples but did not think he would have a good result with them because most diabetics do not. He told Mr. Oster to take the pill and read a sexual magazine or related movie. He testified that Mr. Oster later reported to him that the pills did not work and that he would not be filling the prescription.

Dr. Murrillo was also asked about an office note from 1996 that listed Mr. Oster as "impotent" and prescribed a "Stay Erect kit." (R.R. at 118a). Dr. Murrillo explained that he normally asked his diabetic patients about sexual problems because long-term diabetes affects flow to every part of the body, including the sexual organs. He stated that Mr. Oster later reported to him that he never filled the prescription for the kit.

Dr. Murrillo stated that Mr. Oster had never told him that he had an active sex life and it was the doctor's opinion that Mr. Oster suffered from erectile dysfunction due to his general knowledge of long-term diabetic patients. He stated that it would be virtually impossible for Mr. Oster to engage in a sexual relationship with anyone in light for his having Diabetes Mellitus for the past twenty-five years.

The WCJ determined that the medical evidence did not establish that Mr. Oster suffered from permanent erectile dysfunction. She also did not find Claimant or Mr. Oster credible in their claims that Mr. Oster was only residing with Claimant due to his home remodeling. The WCJ noted that Mr. Oster and Claimant had been residing together for a year and one-half. The WCJ noted that the videotape showed Claimant embracing Mr. Oster with her hand and arm around his neck and lingering over a kiss directly on the lips. She stated that the embrace and kiss occurred twice.[2] The WCJ stated as follows, "[o]ne cannot know for sure what levels of intimacy Mr. Oster, Mrs. Anthony, or even her counsel enjoy with their 'friends,' but one could safely say the embrace and lingering kiss depicted twice on the video tape is not the type of kiss the majority of Pennsylvanians give to their *platonic* friends." (Petitioner's brief, WCJ opinion at 53).

The WCJ thus found that Claimant had engaged in a meretricious relationship. Under the Act, the WCJ then had the discretion to terminate benefits or allow them to continue based on financial hardship. The WCJ found that Claimant would not suffer a financial hardship due to the loss of the workers' compensation benefits because her live-in relationship with Mr. Oster, who was gainfully em-

---

2. We note that the description of the videotape and two embraces and two kisses is contrary to what was reported by the investigator as two embraces and one kiss. (R.R. at 24a–26a).

ployed, "placed her in the position of having self-support." (Petitioner's brief, WCJ opinion at 55).

Claimant then appealed to the Board. The Board upheld the decision of the WCJ, finding that there was substantial evidence that Claimant was engaged in a meretricious relationship and agreeing that Claimant would not suffer an economic hardship due to the loss of her benefits.

 Claimant now appeals to this Court.[3] Claimant alleges that the Board erred in determining that Claimant entered into a meretricious relationship, as substantial evidence does not support the decision. Claimant also alleges that it was an abuse of discretion to determine that the loss of the workers' compensation benefits would not place a financial hardship on Claimant.

Section 307(7) of the Act provides that if a widow is living with a man in a meretricious relationship on the date the termination petition is filed, the Board may order the termination of the widow's benefits. We have defined a meretricious relationship as one in which the individuals are living together, without the benefit of marriage, in a carnal way. *J.H. v. Workers' Compensation Appeal Board (Oley Township)*, 810 A.2d 186 (Pa.Cmwlth.2002). We have further defined "carnal" as meaning "sexual." *J.H.*, 810 A.2d at 190, fn. 12.

 It is the employer that has the burden of establishing, through direct evidence, the existence of the alleged carnal relationship. *J.H.*, 810 A.2d at 190. The

evidence presented must constitute "substantial evidence." *Gamble v. Workmen's Compensation Appeal Board (Burrell Construction and Supply Co.)*, 143 Pa. Cmwlth.277, 598 A.2d 1071, 1073 (1991). " 'Substantial evidence' is that which constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gamble*, 598 A.2d at 1073.

This Court has reviewed numerous cases involving meretricious relationships. However, the large majority involved cases where the meretricious relationship was actually admitted or where the individuals involved acknowledged conceiving a child together. *See J.H.* (parties admitted conceiving child together and medical testimony regarding ongoing sexual relationship also admitted into evidence); *Shultz v. Workmen's Compensation Appeal Board (Leroy Roofing Company and The PMA Group)*, 154 Pa.Cmwlth. 34, 621 A.2d 1239 (1993), *petition for allowance of appeal denied*, 539 Pa. 672, 652 A.2d 841 (1994)(admission of meretricious relationship); *Nevius v. Workmen's Compensation Appeal Board (I. Reindollar and Sons, Inc.)* 52 Pa.Cmwlth.418, 416 A.2d 1134 (1980)(admission of meretricious relationship); and *Workmen's Compensation Appeal Board v. Worley*, 23 Pa.Cmwlth. 357, 352 A.2d 240 (1976)(admission of conceiving child together); *See also McCusker v. Workmen's Compensation Appeal Board (Rushton Mining Company )*, 536 Pa. 380, 639 A.2d 776 (1994)(admission of meretricious relationship); *Bethenergy*

---

3. Our scope of review is limited to determining whether constitutional rights have been violated, errors of law committed, or whether findings of fact are not supported by substantial evidence. *Tri–Union Express v. Workers' Compensation Appeal Board (Hickle )*, 703 A.2d 558 (Pa.Cmwlth.1997). We also acknowledge our Supreme Court's recent decision in *Leon E. Wintermyer, Inc. v. Workers'*

*Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002), wherein the Court held that "review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Leon E. Wintermyer, Inc.*, 571 Pa. at 203, 812 A.2d at 487.

*Mines, Inc. v. Workmen's Compensation Appeal Board (Sadvary),* 524 Pa. 235, 570 A.2d 84 (1990)(admission of meretricious relationship).

■ In the limited cases where we have addressed the sufficiency of the evidence issue, we have made clear that an employer must establish more than just co-habitation. In *Hess Brothers v. Workmen's Compensation Appeal Board (Gornick)*, 128 Pa.Cmwlth. 240, 563 A.2d 236 (1989), it was factually determined that the claimant was residing with an unmarried male in a home they jointly owned. The individuals also had a joint bank account. The claimant admitted that she cooked for the male and they ate together. However, they denied having a sexual relationship. We determined that while employer had established that the individuals were living together, it had not established that the relationship was carnal in nature. Also, in *Gamble,* it was established that the claimant and an unmarried male resided together in a home they jointly owned and that they had a joint bank account. It was further established that the claimant cooked for the male and they ate together. It was also found that they maintained a social relationship. We determined that this evidence was not sufficient to establish a carnal relationship.

In the instant case, the WCJ determined that the medical evidence presented by Dr. Murillo failed to establish that Mr. Oster suffered from permanent erectile dysfunction because the doctor based his opinion on his "general" knowledge of diabetes patients and had not conducted tests specific to Mr. Oster. (Petitioner's brief, WCJ opinion at 54). While we accept the finding by the WCJ that the evidence was not conclusive as to Mr. Oster's claims of impotency, we must note that the medical evidence also failed to establish that Mr.

Oster was sexually active or sexually involved with any woman.

The evidence presented by Employer does establish that Claimant and Mr. Oster were living together. However, no evidence was presented that they owned joint property or joint bank accounts or that they socialized together. The only testimony presented to establish a carnal relationship was the surveillance tape of them embracing and kissing. The WCJ described the surveillance tape as showing Claimant placing her hand and arm around Mr. Oster's neck and kissing him for a full second, while both stood in the doorway of the home. Then, two minutes later, they once again kissed in the same manner, in the same doorway. (Petitioner's brief, WCJ opinion at 32).

■ We do not believe that evidence that Claimant placed her arms around Mr. Oster's neck twice and kissed him for a second on the lips, twice, is sufficient to establish that a carnal relationship existed. The WCJ found that this was not the type of kiss the majority of Pennsylvanians would give to their platonic friends. While that may or may not be true, it hardly establishes proof of a sexual relationship.

■ We understand that an employer is placed in a difficult position as it has the burden of establishing something as intimate and private as a sexual relationship without violating individual privacy rights. However, that must be balanced with the rights of widows and widowers to receive spousal benefits under the Act, until and unless a meretricious relationship is proven by substantial evidence. Contrary to the WCJ's conclusion, evidence of a person placing an arm around someone's neck and kissing them on the lips for a full second, twice, does not constitute substantial evidence that a carnal relationship exists.

Accordingly the order of the Board is reversed.[4]

### ORDER

AND NOW, this 4th day of April, 2003, the order of the Workers' Compensation Appeal Board is reversed.

Judge LEADBETTER dissents.

---

**4.** As we have determined that substantial evidence did not support the finding of a meretricious relationship, we·need not determine Claimant's alternative argument, i.e., that her benefits should have been continued due to financial hardship.